# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

JOHN DOE

   *Pro Se Appellant*

    v.

THE PENNSYLVANIA STATE
UNIVERSITY; KAREN
FELDBAUM, in her individual and
official capacity; FRANCESCO
COSTANZO, in his individual and
official capacity; UNKNOWN
STAFF OF COUNSELING AND
PSYCHOLOGICAL SERVICES AT
PENN STATE, in his or her individual
and official capacity;

   *Appellees*

No. 22-2990

On appeal from the U.S. District
Court for the Middle District of
Pennsylvania
District Court No. 4:19-cv-01438

Oral Argument Requested

Informal Brief for a *Pro Se* Appellant

January 24, 2023              John Doe

Jurisdiction

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Appellant alleged causes of action for violations of the statutes and Constitution of the United States.

This Court has jurisdiction because the underlying Order on appeal, which dismissed the action in its entirety with prejudice, is a final order that is immediately appealable as of right pursuant to 28 U.S.C. § 1291.

The District Court adopted Magistrate Judge's Report on March 10, 2022. (Dist. Dkt. 111). Appellant filed a timely Motion for Reconsideration on March 24, 2022. (Dist. Dkt. 112). This timely motion tolled his deadline to file an appeal. *See Vora v. Pennsylvania*, 532 F. App'x 97, 3 (3d Cir. 2013) (per curiam) (citations omitted). The District Court's September 30, 2022 Opinion and Order denied Appellant's Motion for Reconsideration. (Dist. Dkt. 120, 121). Appellant filed his notice of appeal on October 21, 2022 (Dist. Dkt. 122) within 30 days of the September 30, 2022 final order.

## Statement of the case

On April 2, 2021, Appellant filed his second Amended Complaint. (Dist. Dkt. 91). On January 21, 2022, the Magistrate Judge issued an Reports and Recommendation dismissing Appellant's second Amended Complaint with prejudice. (Dist. Dkt. 108). On March 10, 2022, the District Judge adopted the Magistrate Judge's Reports and Recommendation. (Dist. Dkt. 111). On March 24, 2022, Appellant filed a Motion to Reconsideration. (Dist. Dkt. 112). On September 30, 2022, the District Court denied Appellant's request. (Dist. Dkt. 120, 121). This appeal followed.

## Statement of related cases

Appellant is unaware of any cases or proceedings related to this appeal.

Statement of facts

This section is drafted against the backdrop that the District Court concluded Appellant "adequately alleges that the disciplinary hearing he was afforded would be insufficient under the Due Process Clause, as he alleges that the tribunal was not impartial." (Dist. Dkt. 111 at 2).

Appellant arrived in the United States in 2017 to start law school. He is a foreign national, and English is not his first language. (Operating Complaint (Dist. Dkt. 91 ¶¶ 7, 11–12).

Judkins Cooper Mathews ("Mathews") was Appellant's Civil Procedure professor. (*Id.* ¶¶ 14, 26). On April 22, 2018, Appellant proposed to create a website on judmathews.com where Mathews can showcase his academic work. Mathews agreed. (*Id.* ¶¶ 15, 16). However, when Appellant actually commenced the transaction, Mathews was unhappy, but ultimately agreed to accept what Appellant purchased as a gift. (*Id.* ¶¶ 19, 23).

Appellant began to work for Mathews since May 14, 2018, and Appellant viewed Mathews as a father figure. (*Id.* ¶¶ 24, 28). However, Appellant faced numerous difficulties, including being assaulted by Mathews and pressured to commit academic fraud. (*Id.* ¶ 35).

To manage the stress caused by Mathews, Appellant contacted the University Counseling and Psychological service. (*Id.* ¶ 36).

Reaching the end of summer, Mathews changed his mind and demanded Appellant to sell the domain instead of simply gifting him.  (*Id.* ¶ 45).

Sensing Mathews' another mood swing, Appellant informed he was so suffering under Mathews that he was seeking psychological help, asked Mathews to stop contacting him, and put up a mock website on judmathews.com and informed Mathews. Mathews did not reply. (*Id.* ¶¶ 47, 48).

On August 13, 2018, Appellant was demanded by law school deans to take down the website. Appellant complied, and the compliance was verified. (*Id.* ¶¶ 50, 52). On August 17, 2018, Appellant was informed that a "no-contact directive" prohibiting Appellant from contacting Mathews was issued against him after another University official verified the website was taken down. (*Id.* ¶¶ 55, 57).

However, this was not the end. Appellant was contacted multiple times whether Appellant contacted Mathews and Appellant denied. (*Id.* ¶ 61). On February 20, 2019, Appellant was found to have violated the no-contact directive by sending Mathews text messages and was formally charged. (*Id.* ¶ 72). Appellant denied the Appellee's charge and requested a hearing. (*Id.* ¶ 74).

Via the information packet provided to Appellant, Appellees revealed the no-contact directive was issued as a response to Mathews complaining about Appellant publishing a website on "judmathews.com." (*Id.* ¶ 82, *see also* Dist. Dkt. 91-3). After enduring a proceeding by a biased tribunal, Appellant was sanctioned to go through an entire year of psychiatrist treatment in addition to a "conduct

probation" sanction. (Dist. Dkt. 91 ¶ 108). The rationale was partly based on

Appellee's belief that Appellant still secretly runs judmathews.com. (*Id.* ¶ 111).

Statement of Issues

1. Whether a University can require a student to receive mental health treatment for a year while violating due process of a student?

2. Whether a University can escape its first amendment liability by successfully preventing a student's first amendment right to exercise and claim the University is not liable because little was published?

3. Whether a district court may grant a defendant's 12(b)(6) motion because what stated in the complaint is "divorced from facts" (Dist. Dkt. 120 at 19) while what defendants asserted is "true" (*id.* at 12).

Argument

District Court dismissed Appellant's Complaint based on district court's ruling on Defendants' motion to dismiss for failure to state a claim. (*See* Dist. Dkt. 120). Therefore, this Court should review district court's ruling de novo. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003).

1. Appellant's one-year mental health treatment sanction implicates his liberty and property interest.

Based on findings from a procedurally deficient hearing, (concluded by the District Court in Dist. Dkt. 111 at 2), Appellant was sanctioned to go through a year-long mental health treatment.

The theory of Appellant's due process claim under 42 U.S.C. § 1983 is based on stigma-plus. (Operating Complaint (Dist. Dkt. 91 ¶ 144). *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). In order to make out such a claim, "a Appellant must show a stigma to his reputation plus deprivation of some additional right or interest." *Id.* In other words, reputation damage is not actionable unless "it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989). Stigma-plus analysis is used in context other than public employment cases. *see Baraka v. McGreevey*, 481 F.3d 187, 208-10 (3d Cir. 2007).

The focus of the District Court's inquiry was whether Appellant alleged a property or liberty interest.[1] Appellant alleged him being required to receive mental health treatment for a year is the "plus" prong of the stigma-plus inquiry. (Dkt. 112 at 5). The District Court saw it differently.

Appellant concedes there is no direct case law on point that prohibits a University from "requiring a student to see a counselor" while offering no due process protection. (Dist. Dkt. 120 at 14.) However, if the conclusion stands, it will lead to erroneous conclusion that Appellant's "protected liberty interest in refusing medical treatment" *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) is not recognizable simply because he was a student. And this erroneous conclusion is what the District Court has reached: it declines to find "a school requiring a student to see a counselor constitutes the deprivation of a sufficiently tangible interest or right for purposes of a reputation-based due process claim." (Dist. Dkt. 120 at 14). This cannot be the law.

---

[1] As to the stigma prong, while the District Court hold "Penn State held a hearing on Doe's conduct and concluded that he violated a University directive, any statement to that effect would be true, defeating Doe's claim of stigma." (Dist. Dkt. 120 at 12), right before this conclusion, the District Court found Appellant "disputes this finding" (*id*). Appellant's allegation disputing Appellee's finding, coupled with Appellant's allegation that his hearing was insufficient under due process of law, is more than sufficient to survive Appellee's 12(b)(6) challenge. *See D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 12-2046, at *6 (3d Cir. Jan. 8, 2014) ("the District Court correctly concluded that "there is at least a factual dispute between the parties" over whether the relevant statements were false. This dispute is sufficient for D&D to avoid *summary judgment* on the stigma prong of its stigma-plus claim.") (emphasize on summary judgment).

The essence of Appellant's sanction is its mandatory nature (required) for an arbitrary amount of time (one year). As Appellant stated in front of the District Court, it was a sanction, not a generalized program, not a recommendation. In other words, the sanction left Appellant with no choice but to receive unwanted mental health treatment for a year and it must be verified by Appellees. No entity in this Country has ever enjoyed such an intrusion to an individual's "protected liberty interest in refusing medical treatment." *Doe v. U.S. Parole Comm'n*, 958 F. Supp. 2d 254, 265 (D.D.C. 2013).

"The substantive due process aspect of the Fourteenth Amendment protects certain fundamental rights, including the right to . . . refuse unwanted medical treatment and the right to sufficient information to intelligently exercise those rights. " *Doe v. East Stroudsburg Area School District*, No. 3:04-1707, at *5 (M.D. Pa. June 13, 2005) (citing *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990)).

In a workplace context, "[a]s the Third Circuit suggests, an employer may only subject an employee to a medical examination when it 'ha[s] good reason to be doubtful of [the employee's] abilities." *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 519 (3d Cir. 2001); *see also Ward v. Merck*, 226 F. App'x 131, 139 & n.20 (3d Cir. 2007) (permitting a fitness-for-duty evaluation in response to complaints about the Appellant's work performance and his strange behavior among his fellow employees, stating that an employer should "'identify a legitimate, non-discriminatory reason[ ] to doubt the employee's capacity to

perform his or her duties'") (quoting *Conroy*, 333 F.3d at 98)." *Equal Emp't Opportunity Comm'n v. U.S. Steel Corp*., No. 10-1284, at *25 (W.D. Pa. Feb. 20, 2013). In other words, even in an employment context where there is "a business necessity exception" *Id.*, the most an employer can do was subject an employee to a medical examination, not like here where the University imposing an one-year long forced mental health treatment. *See, e.g., Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999) ("an employer needs to be able to determine the cause of an employee's aberrant behavior," and asking an employee to undergo mental examination to determine fitness for duty following unusual behavior is "not enough to suggest that the employee [was] regarded as mentally disabled"); *see also Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998) (a "request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired. Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to [disability discrimination] claims") (cited in *Taylor v. Gen. Motors, LLC*, No. 15-10529, at *19 (E.D. Mich. Mar. 29, 2016) (collecting cases distinguishing request to undergo a mental health evaluation and treatment); *See also López-López v. Robinson Sch.*, 958 F.3d 96, 107 (1st Cir. 2020) (finding employers are prohibited from "using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry'")

In the prison context, inmates have a protected liberty interest in avoiding involuntary psychiatric treatment. *Frederickson v. Wong*, No. 15-02488, at *3 (N.D. Cal. June 13, 2016) (explaining *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)). *See also Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 308 (3d Cir. 2015) (forcible treatment of mentally ill prisoners cannot be a component of a State's program of punishment); *See also Washington v. Harper*, 494 U.S. 210, 221 (1990) (recognizing "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs").

The District Court analyzed Appellant's year-long mental health treatment sanction by quoting the word "qualitatively different" from *Renchenski v. Williams* and distinguished "other forms of counseling or treatment" from a sex offender therapy. (Dist. Dkt. 120 at 14) However, that distinction was never made in *Renchenski*, and here is the actual entire from the opinion.

> "In turn, the Court concluded that transfer to a mental institution was "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and had `stigmatizing consequences.'" *Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010).

In other words, *Renchenski* never compared sex offender therapy with other forms of counseling or treatment, but compared the stigmatizing consequences of submission to mental institutions with consequences of being convicted of other crimes.

Another case that the District Court analyzed supports Appellant's case. The District Court hold because the sex offender therapy involves "intrusive and behavior-modifying techniques," requiring a parolee to undergo sex offender therapy implicates a liberty interest and concluded "[i]mplicit in this reasoning is that more traditional forms of "counseling or treatment" do not." (Dist. Dkt. 120 at 15). However, the case cited by the District Court reveals what the "intrusive and behavior-modifying techniques" means : "an extensive treatment program, which includes their confession to past sex offenses, as a precondition to parole eligibility." *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (emphasis added). Indeed, Neal clarified what it takes to trigger procedural protection: "the stigmatizing consequences of the attachment of the "sex offender" label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Id*., at 830. These targeted sanctions are distinguishable from generally "maintain[ed] treatment and behavioral modification programs (such as anger management or alcohol abuse classes) that have long withstood legal challenge." *Id.*

And "targeted" and "precondition" is precisely what happened to Appellant. Appellant was not sanctioned to participate in a generally managed PSU program (which PSU maintains). And Appellant was not merely advised to receive mental health treatment. Appellant was required to receive a year-long mental health

treatment, and mirroring *Washington v. Harper*, his sanction was coupled with Appellees' administration. And since Appellant was already sanctioned a "conduct probation," failure to comply with Appellant's new sanction on top of "no-contact directive" will elevate Appellant's sanction to immediate deportation. The consequence of that in an educational setting is as as grave as parole ineligibility in the prison setting.

Fundamentally, the district court's holding ignores the fundamental logic behind the principle guiding the educational space. Public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Similarly, Appellant does not shed his constitutional "rights to refuse medical treatment" at the schoolhouse gate. The District Court's holding will empower educational institutions to force any unlikable student to receive mental health treatment arbitrarily, and allow unscrupulous individuals to use this as a device to harass unlikable student. Finally, Because Appellee only offered a passing reference to Appellee's point in the District Court (arguing Appellant's attempt to compare himself with someone who is forced to endure "unwanted medical treatment" is invalid and bizarre (Dist. Dkt. 110 at 16), reversal is warranted in this case.

2. Appellant was sanctioned because Appellees believed Appellant will publish unflattering materials against them.

The sanction against Appellant was prompted because Mathews complained to Appellees that Appellant will publish "defamatory materials" on the website. (Dist. Dkt. 91 ¶ 82, *see also* 91-3). Appellee's pursuit of prohibiting Appellant from publishing anything on the website continued even during a hearing that was supposed to entertain the issue that Appellant somehow contacted Mathews and violated no-contact directive. (Dist. Dkt. 91 ¶ 89). Nevertheless, the District Court concluded because "[w]ithout any allegations that content was displayed on "judmathews.com" at that time" (Dist. Dkt. 120 at 18), Appellees cannot be liable under Appellant's First Amendment retaliation theory. Appellant must emphasize the District Court nor Appellees have ever analyzed his perception theory under his First Amendment Retaliation theory, despite Appellant raised this issue twice. (See Dist. Dkt. 109, 112).

Whether the protected speech was actually engaged in by the employee is not determinative because it is the perception of the employer as to whether that protected activity occurred that matters to a First Amendment retaliation claim. *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016) (explained in *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016)). The tenth circuit court summarized what *Heffernan* is about: "whether a . . . free speech retaliation claim is viable without speech by a Appellant." *Avant v. Doke*, No. 21-7031, at *3 (10th

Cir. June 23, 2022). Accordingly, lack of specific content in Appellee's case is not outcome-determinative of Appellant's First Amendment retaliation claim.

Instead, what matters is the "motive" of the state actor. *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016). Specifically, if the state acts "out of a desire to prevent the [individual] from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983 —even if, as here, the employer makes a factual mistake about the employee's behavior. *Id.* at 273 (2016). This line of logic was adopted by the District Court before. *See Dimarco v. Borough of St. Clair*, 511 F. Supp. 3d 545, 551 (M.D. Pa. 2021) ("the complaint alleges that DiMarco was suspended for his actions at the fundraiser, despite the fact that he was not actually at the fundraiser. . . . This is sufficient to infer that Defendants suspended DiMarco based on a mistaken belief that he engaged in protected activity during the fundraiser, and the complaint therefore states a retaliation claim under Heffernan .") *See also Bird v. W. Valley City*, 832 F.3d 1188 (10th Cir. 2016) (applying *Heffernan* to a free speech claim in a case without a political association claim).

Here, Appellant alleged the time proximity between Appellee's action and Appellant's publication of a mock website on "judmathews.com." (Dist. Dkt. 91 ¶¶ 47-48, 50). Appellant also alleged Appellee's, while sanctioning Appellant to go through mental health treatment, their concern was manically preventing Appellee

from publishing anything on "judmathews.com" that Appellee rightfully owns. (Dist. Dkt. 91 ¶ 111). Most significantly, even at a hearing where it was supposed to entertain whether Appellant somehow sent an "anonymous text message" to Mathews, and the offense was violation of directive, the focus was still the website. (Dist. Dkt. 91 ¶ 89).

Allowing Appellees to escape First Amendment liability simply because they acted fast will hand over a playbook to unscrupulous faculty members: now when a student makes a complaint against a faculty member, that faculty member can simply act fast to prevent the student from speaking out while discrediting that student weaponizing any information imaginable. The bottom line is the District Court's reasoning contradicts the binding precedent, reversal of decision regarding Appellant's First Amendment Retaliation Claim is warranted.

3. District court entertained Appellee's 12(b)(6) Motion under an unrecognizable standard.

Finally, the District Court appears to have adopted an unrecognizable standard when entertaining Appellee's 12(b)(6) Motion. When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the Appellant." *Morse v. Lower Merion Sch. Dist*, 132 F.3d 902, 906 (3d Cir. 1997). "A Rule 12(b)(6) motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Id.* (internal quotations omitted).

The district court in a binding case cited by Appellant committed the same error as in here. In Doe, the district court "noted that the [University's] credibility determinations were supported by sufficient evidence." *Doe v. Princeton Univ.*, 30 F.4th 335, 343 (3d Cir. 2022) However, because district court's finding contradicted Doe's assertion, the Third Circuit concluded crediting the University's assertion over the Complaint's was improper. *Id.* The same happened here, where the District Court not only contradicted Appellant's assertion, but discredited Appellant by incorporating what Mathews asserted. (Dkt. 120 at 3). The District Court questioned "accuracy of these quotes" offered by Appellant because Appellant did not attach the letter from the bar examiners. Perhaps the most telling

part is in the end, the district court issued an admonishment and warning (Doc. 120 at 19) partly because Appellant's language is "divorced from facts." *Id.*

The bottom line is a 12(b)(6) inquiry should consist of testing of legal sufficiency, not factual accuracy or credibility of a party. Otherwise no student can challenge any school proceeding even after the court conclude the proceeding was insufficient because the courts will be allowed to simply conclude whatever a school says must be true. The District Court's dismissal of Appellant's Complaint based on these inquiries when entertaining Appellee's 12(b)(6) Motion was improper, and therefore the District Court's decision warrants reversal.

Conclusion

Appellant stands on what his allegation stated claims: he was sanctioned to go through a year-long mental health treatment without due process, and the sanction was in retaliation to Appellant perceived to be publishing his difficult experience with the Professor. Appellant explicitly raised these issue in his district court proceeding. (*See* Dist. Dkt. 112). The District Court applied the wrong law, and most importantly, Appellees declined to respond to Appellant's perception theory under his First Amendment Retaliation theory, and dismissed Appellant's stigma-plus theory as bizarre while offering little analysis. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918 n.4 (3d Cir. 2018) ("Because Appellees failed to argue this before the District Court, this argument is waived."). Accordingly, reversal is appropriate.

Informal Appendix

1. Copy of the District Court Docket

2. Notice of appeal

3. Orders being appealed and accompanying opinions

## Certification

Appellees have ECF access. Appellant certifies the hard copies that
Appellant will send are identical to the electronic copies, and a virus check was
performed using Microsoft Defender on Version January 24, 2023.


January 24, 2023                                              Respectfully submitted,

                                                              ___s/_____.

                                                              John Doe
                                                              P.O. Box 2062
                                                              Linden, NJ 07036
                                                              814-699-0985