In the
# United States Court of Appeals for the Third Circuit

Case No. 22-2990

JOHN DOE 1438,
*Appellant*,

v.

THE PENNSYLVANIA STATE UNIVERSITY; KAREN FELDBAUM, IN HER
INDIVIDUAL AND OFFICIAL CAPACITY; FRANCESCO COSTANZO, IN
HIS INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN STAFF OF
COUNSELING AND PSYCHOLOGICAL SERVICES AT PENN STATE, IN
HIS OR HER INDIVIDUAL AND OFFICIAL CAPACITY,
*Appellees*.

*On Appeal from Orders entered by the United States District Court for the Middle
District of Pennsylvania*

**BRIEF AND ADDENDUM OF APPELLEES THE PENNSYLVANIA
STATE UNIVERSITY, KAREN FELDBAUM, FRANCESCO COSTANZO,
AND UNKNOWN STAFF OF COUNSELING AND PSYCHOLOGICAL
SERVICES AT THE PENNSYLVANIA STATE UNIVERSITY**

**SAUL EWING LLP**

James A. Keller (PA 78955)
Carolyn A. Pellegrini (PA 307026)
Patrick F. Nugent (PA 313979)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964 / -7121 / -7134
F: 215-972-4152
james.keller@saul.com
carolyn.pellegrini@saul.com
patrick.nugent@saul.com

Dated:  February 23, 2023

## United States Court of Appeals for the Third Circuit

## <u>Corporate Disclosure Statement and</u><br><u>Statement of Financial Interest</u>

No. _22-2990_

John Doe

v.

The Pennsylvania State University, et al.

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, <u>See attached</u>
makes the following disclosure:

(Name of Party)

     1) For non-governmental corporate parties please list all parent corporations: There are no non-governmental corporate parties.

     2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

There are no non-governmental corporate parties.

     3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

There is no publicly held corporation having a financial interest in the outcome of the proceeding.

     4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

<u>s/James A. Keller</u>

(Signature of Counsel or Party)

Dated: <u>February 23, 2023</u>

**rev: 09/2014**                    (Page 2 of 2)

Please list the names of **all** parties represented:

- The Pennsylvania State University
- Karen Feldbaum
- Francesco Costanzo
- Unknown Staff of Counseling and Psychological Services at Penn State

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ............................................................................iv

GLOSSARY ................................................................................................ix

INTRODUCTION ........................................................................................1

STATUTES AND RULES ...........................................................................4

STATEMENT OF THE ISSUES...................................................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................5

STATEMENT OF THE CASE.......................................................................5

I.      Doe Works as a Research Assistant for Professor Mathews...........................5

II.     University Counseling Advises Doe to Stop Working or
        Communicating with Professor Mathews ........................................................7

III.    Professor Mathews Allegedly Asks Doe to Sell Him the Domain
        "judmathews.com" and Terminates His Professional Relationship with
        Doe.......................................................................................................................8

IV.     Doe Continues to Contact Professor Mathews.................................................8

V.      Doe Receives an Administrative Directive to Have No Further Contact
        with Professor Mathews .....................................................................................9

VI.     Doe Is Accused of Violating the Administrative Directive by Contacting
        Professor Mathews Through Anonymous Text Messages...........................10

VII.    Doe Is Accused of Secretly Retaining Ownership over the Domain
        "judmathews.com"..............................................................................................11

VIII.   The University Conducts a Hearing to Review the Allegation that Doe
        Violated the Administrative Directive By Contacting Mathews .................12

i

IX.    Procedural History and Rulings Presented for Review ................................13

SUMMARY OF THE ARGUMENT ....................................................................15

STANDARDS OF REVIEW..................................................................................17

ARGUMENT ..........................................................................................................19

I.    The District Court Correctly Dismissed Doe's Fourteenth Amendment Claim Because Doe Does Not Allege Facts Showing the Deprivation of a Protected Liberty Interest Nor a Lack of Due Process Procedures ............19

    A.    Doe    Fails    to    Allege    the    Deprivation    of    a Protected Liberty Interest in His Reputation......................................20

        1.    No Stigma to Reputation .........................................................20

        2.    No "Plus" Factor Through Deprivation of an Additional Right or Interest ......................................................................21

    B.    Even if Doe Could Allege the Existence of a Cognizable Liberty Interest, He Does Not Allege That the Procedures Available to Him Failed to Provide Due Process ...................................................25

II.    The District Court Correctly Dismissed Doe's First Amendment Retaliation Claim Because Doe Does Not Allege Facts Showing That He Engaged in Protected Conduct by Owning the Website Domain, "judmathews.com"..........................................................................................29

    A.    Doe Waived Any Challenge to the District Court's Threshold Ruling That Doe's Pleadings Do Not Allege Protected Conduct.......30

    B.    The District Court Correctly Determined That Doe's Registration of a Website Domain Is Not Protected Conduct under the First Amendment Because the Domain Served Only a Functional Purpose ...........................................................................................31

C.  The District Court Also Correctly Dismissed Doe's First Amendment Retaliation Claim Because Doe Does Not Plead That He Suffered Retaliation Because the University Defendants Believed He Had Engaged in Protected Conduct ...............................35

III.  Doe Confuses the Motion to Dismiss Standard with the Standard Applicable to a Motion for Reconsideration, Which the District Court Correctly Applied ...........................................................................38

A.  The District Court Correctly Evaluated Doe's Motion for Reconsideration for "Clear Error"........................................................38

B.  Doe's Challenges to the District Court's Decision on Reconsideration Lack Merit and Are Not Dispositive........................39

CONCLUSION ..................................................................................43

CERTIFICATE OF BAR ADMISSION ...................................................44

CERTIFICATE OF COMPLIANCE........................................................45

CERTIFICATE OF FILING AND SERVICE ...........................................47

ADDENDUM

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvin v. Suzuki*,
   227 F.3d 107 (3d Cir. 2000)..................................................................19

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
   802 F. Supp. 2d 536 (D. Del. 2011)......................................................40

*Avant v. Doke*,
   No. 21-7031, 2022 WL 2255699 (10th Cir. June 23, 2022)................36

*Baloga v. Pittston Area Sch. Dist.*,
   927 F.3d 742 (3d Cir. 2019).................................................................30

*Bird v. W. Valley City*,
   832 F.3d 1188 (10th Cir. 2016) ...........................................................36

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006)..................................................................22

*Cody v. CIGNA Healthcare of St. Louis, Inc.*,
   139 F.3d 595 (8th Cir. 1998) ...............................................................24

*Coleman v. Dretke*,
   395 F.3d 216 (5th Cir. 2004) ...............................................................23

*D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*,
   552 F. App'x 110 (3d Cir. 2014) ......................................................... 21

*DiMarco v. Borough of St. Clair*,
   511 F. Supp. 3d 545 (M.D. Pa. 2021)...................................................36

*Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of
   Human Servs.*, 796 F.3d 293 (3d Cir. 2015)................................. 24, 25

*E.E.O.C. v. U.S. Steel Corp.*,
   No. CIV.A. 10-1284, 2013 WL 625315 (W.D. Pa. Feb. 20, 2013)............. 23, 24

*FDIC v. Deglau*,
  207 F.3d 153 (3d Cir. 2000)........................................................ 20, 31

*Fogleman v. Mercy Hosp., Inc.*,
  283 F.3d 561 (3d Cir. 2002)........................................................ 30, 31

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)..............................................................18

*Frederickson v. Wong*,
  No. 15-CV-02488-KAW, 2016 WL 3253831 (N.D. Cal. June 13, 2016)...........24

*Furey v. Temple Univ.*,
  730 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................27

*Furey v. Temple Univ.*,
  884 F. Supp. 2d 223 (E.D. Pa. 2012) .......................................... 26, 28

*Gorman v. Univ. of R.I.*,
  837 F.2d 7 (1st Cir. 1988).....................................................................28

*Goss v. Lopez*,
  419 U.S. 565 (1975)...............................................................................26

*Heffernan v. City of Paterson, N.J.*,
  578 U.S. 266 (2016)........................................................................ 35, 36

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006)....................................... 19, 20, 22, 25

*In re Vehicle Carrier Servs. Antitrust Litig.*,
  846 F.3d 71 (3d Cir. 2017), *as amended* (Jan. 25, 2017) ........................... 18, 39

*Jaksa v. Regents of the Univ. of Mich.*,
  597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986)........26

*Jews For Jesus v. Brodsky*,
  993 F. Supp. 282 (D.N.J. 1998), *aff'd*, 159 F.3d 1351 (3d Cir. 1998) ...............32

*LabMD, Inc. v. Tiversa Holding Corp.*,
   785 F. App'x 74 (3d Cir. 2019) ............................................................18

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
   26 F.3d 375 (3d Cir. 1994)............................................................ 20, 31

*Leja v. Schmidt Mfg., Inc.*,
   743 F. Supp. 2d 444 (D.N.J. 2010) ......................................................39

*Lopez-Lopez v. Robinson Sch.*,
   958 F.3d 96 (1st Cir. 2020)................................................................. 24

*Mark v. Borough of Hatboro*,
   51 F.3d 1137 (3d Cir. 1995)................................................................19

*Munroe v. Cent. Bucks Sch. Dist.*,
   805 F.3d 454 (3d Cir. 2015).................................................................35

*Muraveva v. Toffoli*,
   709 F. App'x 131 (3d Cir. 2017) ........................................................ 31

*Name.Space, Inc. v. Network Sols., Inc.*,
   202 F.3d 573 (2d Cir. 2000)............................................................ 33, 34

*Neal v. Shimoda*,
   131 F.3d 818 (9th Cir. 1997) ............................................................. 23

*Palardy v. Twp. of Millburn*,
   906 F.3d 76 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019).....................30

*Peter v. Lincoln Tech. Inst., Inc.*,
   255 F. Supp. 2d 417 (E.D. Pa. 2002) ..................................................40

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
   No. 97-629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997), *aff'd*,
   152 F.3d 920 (2d Cir. 1998)............................................................. 32, 34

*Renchenski v. Williams*,
   622 F.3d 315 (3d Cir. 2010).................................................................23

*Resorts Int'l v. Greate Bay Hotel & Casino, Inc.*,
   830 F. Supp. 826 (D.N.J. 1992) ............................................................. 39

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) ................................................................. 18

*Sill v. Pa. State Univ.*,
   462 F.2d 463 (3d Cir. 1972) ................................................................. 25

*Sullivan v. River Valley Sch. Dist.*,
   197 F.3d 804 (6th Cir. 1999) ......................................................... 23, 24

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ................................................................. 17

*Taylor v. Gen. Motors, LLC*,
   No. CV 15-10529, 2016 WL 1223358 (E.D. Mich. Mar. 29, 2016) .................. 24

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
   309 F.3d 144 (3d Cir. 2002) ..................................................... 31, 32, 34

*Tennant v. Range Res. - Appalachia, LLC*,
   No. CV 18-1533, 2021 WL 5040421 (W.D. Pa. Oct. 29, 2021) ................. 39, 40

*Tice v. Ctr. Area Transp. Auth.*,
   247 F.3d 506 (3d Cir. 2001) ......................................................... 23, 24

*Troster v. Pa. State Dep't of Corr.*,
   65 F.3d 1086 (3d Cir. 1995) ......................................................... 32, 33

*United States v. Grape*,
   549 F.3d 591 (3d Cir. 2008) ................................................................. 39

*United States v. Kubini*,
   Crim. No. 11-14, 2018 WL 4282852 (W.D. Pa. Sept. 7, 2018) ........................ 39

*United States v. Smith*,
   445 F.3d 713 (3d Cir. 2006) ................................................................. 18

*Vitek v. Jones*,
  445 U.S. 480 (1980)..........................................................................24

*Ward v. Merck*,
  226 F. App'x 131 (3d Cir. 2007) ................................................ 23, 24

*Washington v. Harper*,
  494 U.S. 210 (1990).........................................................................24

*Web-adviso v. Trump*,
  927 F. Supp. 2d 32 (E.D.N.Y. 2013) .......................................... 33, 34

*Zimmerlink v. Zapotsky*,
  539 F. App'x 45 (3d Cir. 2013) ......................................................30

**Constitution and Statutes**

U.S. Const. amend. I ............................................................. *passim*

U.S. Const. amend. XIV ......................................................... *passim*

42 U.S.C. § 1983 ............................................................. 2, 14, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................... 15, 17, 38

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*
  (3d ed. 2004) ...................................................................22

# **GLOSSARY**

| | |
|---|---|
| CAPS | The University's Counseling and Psychological Services |
| Code | The University's Student Code of Conduct |
| Doe | Plaintiff-appellant John Doe |
| SAppx | Supplemental Appendix |
| University | Defendant-appellee The Pennsylvania State University |
| University Defendants | Defendants-appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University (collectively) |

## **INTRODUCTION**

Plaintiff-appellant John Doe ("Doe") was a law student at The Pennsylvania State University (the "University"). During his time at the University, Doe developed a particular focus on one of his professors, Judkins Mathews, for whom he worked as a research assistant. Around that same time, Doe sought out counseling from the University's counseling service and was advised to cease working and communicating with Professor Mathews. Eventually, and following controversy over Doe's creation of a website domain bearing Professor Mathews's name, the University issued an administrative directive instructing Doe not to contact Professor Mathews in any manner. The University concluded that Doe violated that directive by sending text messages from spoofed phone numbers to Professor Mathews. For his misconduct, the University placed Doe on conduct probation and required him to continue receiving counseling. Doe completed his studies and graduated with his law degree.

Doe filed suit against the University and certain employees with whom he had contact in counseling or during the student conduct proceedings (Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University, referred to collectively with the University as the "University Defendants"). The operative complaint is Doe's Second Amended Complaint, which contains fifteen counts and

represents Doe's third attempt to state viable claims against the University Defendants. The only claims at issue in this appeal are counts under 42 U.S.C. § 1983 for purported violations of Doe's Fourteenth Amendment right to due process and for First Amendment retaliation.

The District Court gave Doe every benefit of the doubt throughout the proceedings below and faithfully applied well-established legal principles in granting the University Defendants' Motion to Dismiss Doe's Second Amended Complaint (Docs. 108, 111) and denying Doe's subsequent Motion for Reconsideration (Docs. 120 – 121).[1] This Court should affirm those rulings for at least the following reasons.

---

[1] While Doe's Notice of Appeal purports to "appeal" a number of other orders and opinions in this case, the only final orders for review, and the only opinions and orders substantively challenged in his Brief, are: 1) Chief Magistrate Judge Mehalchick's Report and Recommendation recommending dismissal of Plaintiff's Second Amended Complaint (Doc. 108); 2) Chief Judge Brann's March 10, 2022 Order adopting that Report and Recommendation, and dismissing the Second Amended Complaint with prejudice (Doc. 111); and 3) Chief Judge Brann's Opinion and Order denying Doe's Motion for Reconsideration of the March 10, 2022 Order, and closing the case (Doc. 120 and Doc. 121). When reviewing Doe's brief, this Court will also note that he frequently treats the ruling on the Motion to Dismiss (Doc. 108) and the Motion for Reconsideration (Doc. 120) as interchangeable, and/or conflates the two. As this Court's standard of review for the legal decisions in both opinions is plenary, the University Defendants address Doe's arguments holistically below, rather than having their own brief bounce back and forth between the Motion to Dismiss ruling and the Motion for Reconsideration ruling.

*First*, as to Doe's due process claim, Doe does not allege the deprivation of a liberty interest implicating due process protections. Even if he did, Doe does not allege that the procedures afforded to him failed to provide constitutionally-sufficient process. Doe received process that the Supreme Court of the United States has upheld in circumstances when more significant interests were at stake. Doe's only argument challenging the sufficiency of his process is that one of the Defendant-appellees (Feldbaum) was biased against him. Even if the allegations supported Doe's view (which they do not), those same allegations confirm that Feldbaum did not determine the outcome of Doe's student conduct proceeding.

*Second*, as to Doe's First Amendment retaliation claim, Doe has waived any challenge to the District Court's predicate ruling that Doe's Second Amended Complaint does not allege conduct protected by the First Amendment. The District Court's analysis in that regard easily withstands scrutiny; the fact that Doe set up a website domain using the name of a professor—"judmathews.com"—lacks, without more, any element of protected communication. As for Doe's novel argument that he stated a viable First Amendment retaliation claim because the University Defendants perceived his ownership of the website as a threat, that argument also fails. This "perception theory," as Doe calls it, does not cure the absence of factual allegations showing that Doe engaged in constitutionally-

protected conduct, was perceived to have engaged in protected conduct, or threatened to engage in protected conduct.

*Third*, the District Court correctly applied the "clear error" legal standard in considering Doe's Motion for Reconsideration. Moreover, the language from the District Court's reconsideration decision that troubles Doe had no bearing on the District Court's holding.

## STATUTES AND RULES

Applicable statutes and rules are contained in this Brief's Addendum.

## STATEMENT OF THE ISSUES

1.     Whether the District Court correctly dismissed Doe's Fourteenth Amendment due process claim because Doe does not allege facts showing (a) the deprivation of a protected liberty interest and (b) a failure to provide procedures consistent with due process?

2.     Whether the District Court correctly concluded that Doe fails to plead a First Amendment retaliation claim because the website domain, "judmathews.com," serves a purely functional purpose and does not possess inherent elements of communication that invoke First Amendment protection?

3.     Whether the District Court correctly applied the "clear error" standard in evaluating Doe's Motion for Reconsideration of the District Court's order adopting Chief Magistrate Judge Karoline Mehalchick's Report and

Recommendation and dismissing Doe's Second Amended Complaint with prejudice?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. The University Defendants are not aware of any related cases or proceedings within the meaning of Local Appellate Rule 28.1(a)(2).

## STATEMENT OF THE CASE[2]

### I. Doe Works as a Research Assistant for Professor Mathews

Doe began attending law school at the University in fall 2017. (Doc. 91, Second Am. Compl., ¶ 11, SAppx4.)[3] In spring 2018, during Doe's first year in law school, he conducted research for his civil procedure professor, Professor Judkins "Jud" Mathews. At some point, Doe spoke with Professor Mathews and proposed to create a website called "judmathews.com." (*Id.*, ¶ 15, SAppx4.)

---

[2] The University Defendants disagree with many of the facts set forth in Doe's Second Amended Complaint, but they and the District Court were required to accept as true the well-pleaded factual allegations for purposes of the University Defendants' Motion to Dismiss.

[3] Contemporaneously with the filing of this Brief, the University Defendants are filing a Motion for Leave to File a Supplemental Appendix and a proposed Supplemental Appendix. In an order dated December 7, 2022, this Court permitted Doe to appeal on the original record without an appendix. Consistent with instructions from the Clerk's Office, the University Defendants seek leave to submit a Supplemental Appendix containing record documents that Doe did not attach to his Informal Brief. The University Defendants cite the relevant pages from their proposed Supplemental Appendix in this Brief for ease of reference, to the extent that the Court grants their Motion.

Professor Mathews allegedly agreed, if Doe could "get a good deal." (*Id.*, ¶ 16, SAppx4.) Doe contends that he then purchased the domain name "judmathews.com" using "points redeemed from Lexis." (*Id.*, ¶ 17, SAppx4.)[4]

Doe alleges that he informed Professor Mathews of this purchase, but Professor Mathews was "unhappy with the arrangement without stating the reason." (*Id.*, ¶¶ 17-18, SAppx4.) Doe contends that he offered to give Professor Mathews the unwanted domain name as a gift, but Professor Mathews refused the gift and instead offered to pay Doe through an "online broker." (*Id.*, ¶ 19, SAppx5.) Doe told Professor Mathews that if Professor Mathews paid him for the domain name, then Doe would have purchased it "for the sole purpose of reselling," purportedly in violation of "contracts with Lexis."[5] (*Id.*, ¶ 20, SAppx5.) Doe alleges that Professor Mathews then agreed to accept the domain name as a gift. (*Id.*, ¶ 23, SAppx5.) Doe does not allege that he actually gave the domain to Professor Mathews following this conversation.

---

[4] The University Defendants understand this averment to refer to LexisNexis Rewards, a program that rewards law students with points redeemable for gift cards and other merchandise. *See* LexisNexis, *Lexis Rewards Program*, January 25, 2003, https://lexisnexis.custhelp.com/app/answers/answer_view/a_id/1100788/~/lexisnex is-rewards-program.

[5] It is not clear from the Second Amended Complaint to what "contracts" Doe is referring.

## II. University Counseling Advises Doe to Stop Working or Communicating with Professor Mathews

Doe alleges that he continued to work as a research assistant for Professor Mathews through summer 2018. (*Id.*, ¶¶ 42, 46, SAppx8.)[6] During this time, Doe viewed Professor Mathews as a "father figure" and gave Professor Mathews a gift on Father's Day. (*Id.*, ¶ 28, SAppx5.) As to the substance of his work, Doe alleges that he encountered instances where he could not find sources to support assertions in Professor Mathews's work product, and that Professor Mathews purportedly "encouraged [Doe] to make the citation up because the materials are in a foreign language; therefore no one will check." (*Id.*, ¶ 31, SAppx6.) Doe alleges that he objected to this suggestion. (*Id.*) In a similar vein, Doe contends that on another occasion, Professor Mathews asked Doe to "copy [information] directly from a commercial database." (*Id.*, ¶¶ 31-33, SAppx6.) Doe avers that he felt "uncomfortable[]" with this practice and explained this to Professor Mathews. (*Id.*, ¶ 34, SAppx6-7.) At some point during that conversation, Doe alleges that Professor Mathews "threw a pen at [him]." (*Id.*, ¶ 35, SAppx7.)

Following this interaction, Doe states that he called the University's Counseling and Psychological Services (also known as "CAPS") to "seek support." (*Id.*, ¶ 36, SAppx7.) Doe alleges that he was "advised [by CAPS] to stop working for Mathews." (*Id.*, ¶ 37, SAppx7.)

---

[6] Doe's reference to 2019 in paragraph 46 appears to be a typographical error.

### III. Professor Mathews Allegedly Asks Doe to Sell Him the Domain "judmathews.com" and Terminates His Professional Relationship with Doe

"Approaching the end of the summer," Professor Mathews purportedly asked Doe again if he could purchase the domain bearing his name, "judmathews.com." (*Id.*, ¶ 44, SAppx8.) Doe alleges that he again informed Professor Mathews that selling the domain made him "uncomfortable and proposed to delete the domain." (*Id.*, ¶ 45, SAppx8.) Doe alleges that Professor Mathews "opposed the idea" that Doe delete the domain. (*Id.*)

On August 7, 2018, Professor Mathews told Doe that he did "not want to extend this relationship," but also told Doe that he could use Professor Mathews's nickname "JUD" as the name of "Plaintiff's [unspecified] project." (*Id.*, ¶ 46, SAppx8.) Doe agreed that the parties should cease communicating, informing Professor Mathews that CAPS also recommended that Doe "should stop any interaction" with Professor Mathews and "if necessary, invite the student dean to intervene to resolve remaining issues." (*Id.*, ¶ 47, SAppx8.)

### IV. Doe Continues to Contact Professor Mathews

Despite Doe's agreement to cease communications with Professor Mathews, Doe contacted Professor Mathews later that same month (August 2018) and shared with him a "mock website" on "judmathews.com" to demonstrate Doe's "JUD"

project. (*Id.*, ¶ 48, SAppx8.) Professor Mathews did not respond to Doe's communication. (*Id.*)

On August 13, 2018, Keith Elkins, the Student Dean of Penn State Law, emailed Doe, requesting that Doe "delete the domain, unpublish the website, and return research materials to [Professor] Mathews." (*Id.*, ¶ 50, SAppx9.) At a meeting on August 15, 2018, Dean Elkins and Victor Romero (Penn State Law's Associate Dean for Academic Affairs) informed Doe that he would not be able to enroll in any of Professor Mathews's classes. (*Id.*, ¶ 51, SAppx9.) Doe does not allege that he objected to this instruction or otherwise sought to challenge it. (*Id.*, ¶¶ 51-52, SAppx9.) Doe also does not allege that his academic progress was limited due to not being able to enroll in courses taught by Professor Mathews. (*Id.*)

## V.   Doe Receives an Administrative Directive to Have No Further Contact with Professor Mathews

On August 17, 2018, following a meeting with Karen Feldbaum, the Interim Senior Director of the Office of Student Conduct at the University, Doe was given a written administrative directive not to have any "contact—either directly or indirectly, in person, electronically, by telephone or any medium, physical or verbal with Professor Jud Mathews." (*Id.*, ¶¶ 54-57, SAppx9-10; Doc. 91-4, Ex. 4 to Second Am. Compl., SAppx41.) The administrative directive warned Doe that violating the directive "is a violation of the student code of conduct and you may

be subject to disciplinary action and sanctions including interim suspension, suspension, or expulsion from the University." (Doc. 91, Second Am. Compl., ¶ 57, SAppx10; Doc. 91-4, Ex. 4 to Second Am. Compl., SAppx41.)

## VI.    Doe Is Accused of Violating the Administrative Directive by Contacting Professor Mathews Through Anonymous Text Messages

In February 2019, Feldbaum contacted Doe after becoming concerned that Doe may have initiated contact with Professor Mathews in violation of the administrative directive. (*Id.*, ¶ 61, SAppx10.) Feldbaum scheduled a meeting for February 20, 2019, "to get [Doe's] perspective." (*Id.*, ¶ 62, SAppx10.) However, due to a heavy snowstorm on February 20, that meeting did not occur because the University canceled all classes and activities for that day. (*Id.*, ¶ 63, SAppx10.)

Nevertheless, on the morning of February 20, 2019, Feldbaum contacted Doe via email and informed him that Professor Mathews had received "a series of text messages" from unknown telephone numbers. (*Id.*, ¶¶ 66-69, SAppx11.) By their context and substance, Professor Mathews and Feldbaum believed the messages were coming from Doe, in violation of the administrative directive. (*Id.*) Doe denied having "any association" with these text messages. (*Id.*, ¶ 70, SAppx11.)

Feldbaum issued a charge and proposed sanction against Doe under the University's Student Code of Conduct (the "Code") for failing to comply with the administrative directive that prevented Doe from contacting Professor Mathews.

(*Id.*, ¶ 72, SAppx12.) The proposed sanctions were "conduct probation with transcript notation" and a "counseling assessment." (*Id.*; Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx43.) Feldbaum asked that Doe sign a release so that Feldbaum could ensure that Doe completed his counseling assessment. (Doc. 91, Second Am. Compl., ¶ 75, SAppx12.) At that point, Doe could have accepted the charges and Feldbaum's proposed sanctions. He did not. Doe instead contested the charges and requested an administrative hearing, which was granted. (*Id.*, ¶¶ 74, 82-97, SAppx12, SAppx13-15.)

## VII. Doe Is Accused of Secretly Retaining Ownership over the Domain "judmathews.com"

On February 22, 2019, Doe had a meeting with Deans Elkin and Romero to discuss Doe's representation that he had "relinquished control over the domain, 'judmathews.com,' which [Doe] had previously established on Prof. Mathews's behalf as his research assistant." (*Id.*, ¶¶ 78-81, SAppx13; Doc. 91-5, Ex. 5 to Second Am. Compl., SAppx42.) Dean Romero stated that he had reason to believe Doe had not relinquished the domain but "instead transferred the domain to a private account . . . to conceal [Doe's] ownership." (*Id.*) Dean Romero found that Doe "deliberately misled us by previously claiming to no longer have ownership of 'judmathews.com'" and advised that a letter recounting these events would be placed in Doe's record. (*Id.*) Though Doe states that he denied these allegations, he

does not allege that he provided a formal response to the letter placed in his record.

(*Id.*, ¶¶ 80-81, SAppx13; Doc. 91-5, Ex. 5 to Second Am. Compl., SAppx42.)

## VIII. The University Conducts a Hearing to Review the Allegation that Doe Violated the Administrative Directive By Contacting Mathews

Shortly thereafter, on March 4, 2019, Doe received a batch of information to help him prepare for the Administrative Hearing, including a "Behavioral Threat Management Team Referral Form" completed by Professor Mathews and a "Statement to the Hearing Officer" that Professor Mathews had submitted. (Doc. 91, Second Am. Compl., ¶¶ 82, 84, SAppx13-14; Doc. 91-3, Ex. 3 to Second Am. Compl., SAppx37-40; Doc. 91-7, Ex. 7 to Second Am. Compl., SAppx45-48.)[7] Professor Mathews's statement included the content of the troubling text messages and stated that "for reasons of timing, content, and context . . . it is difficult to imagine these [five] text[s] coming from anyone other than [Doe]." (Doc. 91-7, Ex. 7 to Second Am. Compl., SAppx45, SAppx48.)

Doe's Administrative Hearing took place eight days later, on March 12, 2019, before hearing officer Francesco Costanzo. (Doc. 91, Second Am. Compl., ¶ 85, SAppx14.) During the hearing, Doe was given the opportunity to speak and offered his perspective. (*Id.*, ¶ 90, SAppx14.) Doe claims that he primarily

---

[7] The "Behavioral Threat Management Team Referral Form" was dated August 10, 2018, and authored by Professor Mathews. (Doc. 91-3, Ex. 3 to Second Am. Compl., SAppx37-40.) Mathews was advised to file this form by Dean Elkins and Ben Locke, the Senior Director of CAPS. (*See id.*)

discussed the domain name issue. (*Id.*) After Doe finished his testimony, Professor Mathews was given an opportunity to speak. (*Id.*, ¶¶ 91-94, SAppx14-15.)

Later that day, Feldbaum informed Doe that the hearing officer found him responsible for a conduct violation, and Doe would be sanctioned to conduct probation through fall 2019 with concurrent counseling at CAPS. (*Id.*, ¶ 108, SAppx17.) The sanction was based on Doe's violation of the administrative directive which, in turn, was based on a determination that Doe had engaged in "Calle[r] ID Spoofing" and sent text messages to Professor Mathews. (*Id.*, ¶¶ 109-110, SAppx17; Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx55-57.) Doe was also required to continue his counseling due to the fact that he "insisted in declaring that his actions revolving around the domain name and associated website were at the behest of Dr. Matthews [sic]." (Doc. 91, Second Am. Compl., ¶ 111, SAppx17; Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx57.)

On March 19, 2019, Doe attempted to appeal his conduct sanction. However, consistent with the Code, Feldbaum correctly informed Doe that an appeal may not be taken when the sanction is less than a suspension. (Doc. 91, Second Am. Compl., ¶¶ 115-16, SAppx18.)

## IX.    Procedural History and Rulings Presented for Review

Doe initiated this action by filing a Complaint on August 19, 2019. (Doc. 1.) Doe filed an Amended Complaint a few weeks later on September 16, 2019.

(Doc. 11.) The University Defendants filed a Motion to Dismiss (Doc. 40), which Chief Magistrate Judge Mehalchick recommended be granted in its entirety (Doc. 71). Chief Judge Brann accepted the Report and Recommendation in full and, on September 11, 2020, ordered dismissal of Doe's Amended Complaint with leave to amend further. (Doc. 76.)

Doe filed his Second Amended Complaint (the operative complaint) on April 2, 2021, setting forth fifteen causes of action, the following of which are at issue in this appeal:

> 1)  "Count 1 – Against All Defendants 42 U.S.C. § 1983, First Amendment Retaliation" (Doc. 91, Second Am. Compl., ¶¶ 137-143, SAppx22); and
>
> 2)  "Count 2 – Against Dean Feldbaum and Costanzo, 42 U.S.C. § 1983 – Violation of Fourteenth Amendment" (*id.*, ¶¶ 144-145, SAppx23-24).

The University Defendants moved to dismiss Doe's Second Amended Complaint. (Doc. 92.) Chief Magistrate Judge Mehalchick again recommended that Doe's claims be dismissed—this time with prejudice. (Doc. 108, SAppx58-86.) Doe filed a Motion for Reconsideration of the Report and Recommendation (Doc. 109), which the District Court construed as timely objections (Doc. 111, Order). After conducting a *de novo* review of the Report and Recommendation,

Chief Judge Brann found "no error in Chief Magistrate Judge Mehalchick's recommendation," adopted her report, and ordered the dismissal of Doe's Second Amended Complaint with prejudice. (Doc. 111.)

Doe then filed a Motion for Reconsideration. (Doc. 112.) Following briefing by the parties, on September 30, 2022, the District Court issued a Memorandum Opinion and Order denying Doe's motion. (Doc. 120, Memo. Op.; Doc. 121, Order.)

On October 21, 2022, Doe filed a Notice of Appeal. (Doc. 122.)

## SUMMARY OF THE ARGUMENT

As noted above, in his appeal, Doe challenges only three things: a) the Court's ruling on due process; b) the Court's ruling on his First Amendment "retaliation" claim; and c) the Court's purported misapplication of the 12(b)(6) standard.

The Court should affirm for the following reasons:

***Due Process:*** The District Court correctly dismissed Doe's Fourteenth Amendment due process claim for two independent reasons. *First*, as a matter of law, Doe does not allege the deprivation of a protected liberty interest in his reputation. Without a protected interest, Due is not entitled to due process protections. *Second*, even if he were so entitled, Doe also does not allege that the procedures afforded to him failed to provide constitutionally-sufficient due

process. In fact, Doe received the process that applies when much more serious deprivations are at issue—i.e., suspension or expulsion. Doe's claim that the hearing officer was not impartial fails because Doe does not allege a link between the individual Doe accuses of bias (Feldbaum) and the outcome of Doe's student conduct proceeding. The report from Doe's student conduct hearing, which Doe attaches to his Second Amended Complaint, confirms that someone other than Feldbaum (namely, Costanzo) made the finding and issued the sanction against him.

*First Amendment:* In his opening brief, Doe dives right into his "retaliation" and "perception" arguments, bypassing the threshold issue of whether he adequately pled protected speech or expression. In fact, he contends that "whether protected speech was actually engaged in [ ] is not determinative …." (Doe's Br. at 14.) Doe therefore has waived any challenge to the District Court's ruling that his Second Amended Complaint does *not* allege conduct protected by the First Amendment. Even if not waived, the District Court correctly determined that Doe does not allege conduct protected by the First Amendment, under any theory. The District Court correctly concluded that the creation of Doe's website domain "judmathews.com"—which was only the name of a professor with no content— served a purely functional purpose and did not possess inherent elements of communication that are necessary to secure First Amendment protection, let alone

16

state a First Amendment retaliation claim. Doe's novel argument that the University Defendants perceived his ownership of the domain as an unspecified "threat" ignores that his Second Amended Complaint still fails to allege that he: a) engaged in constitutionally-protected conduct; b) was perceived to have engaged in protected conduct; or c) threatened to engage in protected conduct.

*Legal Standard:* The District Court correctly reviewed for "clear error" Doe's Motion for Reconsideration of the court's order adopting the Chief Magistrate's Report and Recommendation to dismiss his Second Amended Complaint because that is the legal standard applicable to motions for reconsideration. However, even if the District Court had reviewed Doe's reconsideration motion under a less stringent standard, it was correct. Doe's motion challenges only tangential language in the District Court's opinion that does not alter the District Court's analysis. Ultimately, Doe fails to demonstrate that the court erred in its ruling.

## STANDARDS OF REVIEW

This Court "conduct[s] [a] plenary review of an order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure (12)(b)(6)." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 325 (3d Cir. 2019). This Court has set forth a three-part analysis that a court must conduct in evaluating whether allegations in a complaint survive a motion to dismiss under Rule 12(b)(6). *See*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). *First*, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quotations omitted). *Second*, the court should "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). *Finally*, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quotations omitted).

While the court must accept the complaint's well-pleaded facts as true, a complaint must do more than allege a plaintiff's entitlement to relief—it must "show" such an entitlement with facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Additionally, the court must disregard a complaint's "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *LabMD, Inc. v. Tiversa Holding Corp.*, 785 F. App'x 74, 77 (3d Cir. 2019) (quotations omitted); *see also Santiago*, 629 F.3d at 131.

This Court reviews orders denying a motion to reconsider for abuse of discretion, but conducts a plenary review of an "order denying [a] motion to reconsider . . . where the denial was based on the interpretation and application of a legal precept." *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 79 (3d Cir. 2017), *as amended* (Jan. 25, 2017) (quoting *United States v. Smith*, 445 F.3d 713, 716 (3d Cir. 2006)).

**<u>ARGUMENT</u>**

**I.    The District Court Correctly Dismissed Doe's Fourteenth Amendment Claim Because Doe Does Not Allege Facts Showing the Deprivation of a Protected Liberty Interest Nor a Lack of Due Process Procedures**

To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). And to state a due process claim under § 1983, as Doe attempts to do here, Doe must plausibly "allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

## A.    Doe Fails to Allege the Deprivation of a Protected Liberty Interest in His Reputation[8]

Doe argues that University-required counseling constitutes deprivation of a liberty interest in his reputation under a stigma-plus theory. (*See* Doe's Br. at 7-13.) To state a claim under this theory, Doe must allege facts showing stigma to his reputation *plus* deprivation of some additional right or interest. *See Hill*, 455 F.3d at 236. He does not do so.

### 1.    No Stigma to Reputation

To satisfy the stigma prong, Doe must allege "purportedly stigmatizing statement(s)" that "(1) were made publicly . . . and (2) were false." *Id.* (citations omitted). Doe does not do that. Doe's argument is murky at best, but he seems to hone in on the notion that the University may have publicly stated that the University held a hearing regarding Doe's conduct, and found Doe responsible. (*See* Doe's Br. at 8 n.1.) As the District Court properly noted, even if such statements were made publicly, they are true and therefore not actionable. There is

---

[8] Doe's brief includes two passing references to purported deprivations of his property interests but does not identify those interests or advance any argument around them. (*See* Doe's Br. at 7-8.) Doe has waived any challenge as to the District Court's rulings that Doe failed to allege deprivations of any protected property interests. *See FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000) (finding an issue not raised in opening brief on appeal was waived and would not be addressed); *see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court.").

no dispute that a hearing took place, and that as a result of that hearing, the Administrative Hearing Officer found Doe responsible for violating the administrative directive. (Doc. 91, Second Am. Compl., ¶ 108, SAppx17.) To be sure, Doe disputes the finding, but that is beside the point. What matters is the truth of any "statement" that Doe was found responsible for violating the administrative directive. He was. Any statement reporting out that finding would be entirely accurate.

Doe tries to escape this result by relying on *D & D Associates, Inc. v. Board of Education of North Plainfield*, 552 F. App'x 110 (3d Cir. 2014), but that decision does not support his argument. In that case, the parties disputed the accuracy of a statement that the plaintiff had defaulted on a contract when no formal default proceedings had occurred. *Id.* at 113. Here, by contrast, there is no dispute among the parties that a hearing occurred and a decision was rendered in which Doe was found responsible for violating the administrative directive. (Doc. 91, Second Am. Compl., ¶¶ 85-97, 108, SAppx14-15, SAppx17.) The "statement" at issue here is true, whereas the statement in *D & D Associates* was disputed, and that makes all the difference.

> ## 2. No "Plus" Factor Through Deprivation of an Additional Right or Interest

Even if Doe could satisfy the "stigma" prong, Doe still could not state a due process claim on the basis of a liberty interest in his reputation because he has not

21

alleged facts showing the requisite "plus" factor—i.e., the deprivation of an additional right or interest. *See Hill*, 455 F.3d at 236.

Doe argues that the "plus" factor here is the University requiring Doe to see a counselor following his student conduct proceeding. (Doe's Br. at 7-8.) As Doe concedes (*see id.*), and the District Court correctly observed, no legal authority exists "establishing that a school requiring a student to see a counselor constitutes the deprivation of a sufficiently tangible interest or right for purposes of a reputation-based due process claim." (Doc. 120, Memo. Op., at 13-14.)

Facing this reality, Doe recasts the counseling as forced "medical treatment" and "involuntary psychiatric treatment." (Doe's Br. at 7-13.) It was not either of those things. Doe was not required to be treated by a psychiatrist or required to use psychiatric medication. He was simply required to continue with counseling he was *already receiving* at CAPS. (*See* Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx55-57; Doc. 91, Second Am. Compl., ¶¶ 36, 47, 114, SAppx7, SAppx8, SAppx18; Doc. 91-3, Ex. 3 to Second Am. Compl., SAppx37-40.)[9]

---

[9] "In evaluating a motion to dismiss, [the Court] may consider documents that are attached to or submitted with the complaint . . . and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)) (citations omitted)).

The comparisons Doe attempts to draw with sex offenders, employees, and inmates only magnify the qualitative differences between those situations and Doe's required counseling. (*See* Doe's Br. at 9-12.) Those qualitative differences matter, as this Court observed with respect to sex offender treatment therapy in *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010). *See id.* at 328 (citing *Coleman v. Dretke*, 395 F.3d 216, 223 (5th Cir. 2004)); *see also Coleman*, 395 F.3d at 223 (emphasizing "intrusive and behavior-modifying techniques" in sex offender therapy). These exceptional circumstances stand in stark contrast to more traditional forms of counseling or treatment, like the on-campus counseling Doe was receiving and was required to continue receiving for a time. *See Coleman*, 395 F.3d at 223; *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (noting that "treatment and behavioral modification programs" such as "anger management or alcohol abuse classes" have "long withstood legal challenge"); (Doc. 120, Memo. Op., at 13-15).

Doe's comparison to employers requiring that employees receive mandatory medical examinations is also unavailing. Not a single one of the decisions Doe cites involves due process or provides any due process analysis. *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506 (3d Cir. 2001); *Ward v. Merck*, 226 F. App'x 131 (3d Cir. 2007); *E.E.O.C. v. U.S. Steel Corp.*, No. CIV.A. 10-1284, 2013 WL 625315 (W.D. Pa. Feb. 20, 2013); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804

(6th Cir. 1999); *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595 (8th Cir. 1998); *Taylor v. Gen. Motors, LLC*, No. CV 15-10529, 2016 WL 1223358 (E.D. Mich. Mar. 29, 2016); *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96 (1st Cir. 2020). Moreover, every one of these decisions upheld the medical assessments required by employers. *See Tice*, 247 F.3d at 519; *Ward*, 226 F. App'x at 139; *E.E.O.C.*, 2013 WL 625315, at *1; *Sullivan*, 197 F.3d at 808; *Cody*, 139 F.3d at 599; *Taylor*, 2016 WL 1223358, at *4, *7; *Lopez-Lopez*, 958 F.3d at 105-06. In sum, these decisions do not support Doe's claim that requiring counseling deprived Doe of a constitutionally-protected interest.

Finally, Doe's comparison to inmates who are forced to receive involuntary psychiatric treatment bears no resemblance to the counseling Doe was required to attend. Setting aside the truly involuntary nature of the treatment in the inmate context, the treatment in the cases cited by Doe was qualitatively different because it involved involuntary institutionalization and administration of medication. *See Washington v. Harper*, 494 U.S. 210, 221-26 (1990) (involving treatment with antipsychotic drugs against inmate's will); *Vitek v. Jones*, 445 U.S. 480, 487 (1980) (involving involuntary transfer of a prisoner to a mental hospital); *Frederickson v. Wong*, No. 15-CV-02488-KAW, 2016 WL 3253831, *3 (N.D. Cal. June 13, 2016) (involving involuntary transfer of inmate to inpatient mental health treatment); *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796

24

F.3d 293, 309 (3d Cir. 2015) (involving forcible administration of psychotropic drugs). Doe was not involuntarily institutionalized or involuntarily administered medication. He was required to continue with counseling that he was already receiving. (*See* Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx55-57; Doc. 91, Second Am. Compl., ¶¶ 36, 47, 114, SAppx7, SAppx8, SAppx18; Doc. 91-3, Ex. 3 to Second Am. Compl., SAppx37-40.)

In sum, Doe has not alleged either stigma *or* deprivation of an additional right or interest as required to state a claim for deprivation of a liberty interest in reputation under a stigma-plus theory. Without alleging facts showing the deprivation of a constitutionally-protected interest, Doe's due process claim fails. It was properly dismissed.

### B. Even if Doe Could Allege the Existence of a Cognizable Liberty Interest, He Does Not Allege That the Procedures Available to Him Failed to Provide Due Process

Even if Doe presented facts sufficient to allege the existence of a protected liberty interest, he fails to allege that "the procedures available to him did not provide due process of law." *See Hill*, 455 F.3d at 234 (internal quotations omitted). Although "the requirements of due process frequently vary with the type of proceeding involved . . . [t]he basic elements are notice and the opportunity to be heard by a fair and impartial tribunal." *See Sill v. Pa. State Univ.*, 462 F.2d 463, 469 (3d Cir. 1972). Even when students face suspension or sanctions much more

severe than those at issue here, due process requires only "some kind of notice" and "some kind of hearing," *Goss v. Lopez*, 419 U.S. 565, 579 (1975), thereby providing a student with "the opportunity to characterize his conduct and put it in what he deems the proper context," *id.* at 584.

The University Defendants provided more process to Doe than required under constitutional principles and faithfully applied the Code's procedures to Doe's situation.[10] In summary:

- Doe had an opportunity to meet with the case manager during a conference held over email (due to inclement weather) on February 20, 2019, and was made aware of the charge against him. (Doc. 91, Second Am. Compl., ¶¶ 61-73, SAppx10-12.)

- As was his right under the Code, Doe requested a hearing and received one on March 12, 2019. (*Id.*, ¶¶ 74, 85-97, SAppx12, SAppx14-15; Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx44.)

- Doe was informed of the policy and the procedures governing the hearing. (Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx44.)

---

[10] The University's disciplinary proceedings and processes are entitled to judicial deference given that "the primary purpose of a university is to educate its students [and] a school disciplinary proceeding is not a criminal trial." *Jaksa v. Regents of the Univ. of Mich.*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986); *see also Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 247 (E.D. Pa. 2012) (recognizing school's interest in administering "discipline in a way that contributed to the educational process").

- Before the hearing, and as part of his defense, on March 11, 2019, Doe submitted a statement of facts as permitted by the Code. (Doc. 91-8, Ex. 8 to Second Am. Compl., SAppx49-54; Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx44.)

- Under the Code, Doe was permitted to submit evidence and testimony to defend against the charge. He did so. (Doc. 91, Second Am. Compl., ¶¶ 86-90, 97, SAppx14, SAppx15; Doc. 91-8, Ex. 8 to Second Am. Compl., SAppx49-54; Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx44.)

- When the hearing ended, the hearing officer submitted the outcome of the hearing to the case manager, and the case manager notified Doe of the outcome. All of this was consistent with the Code. (Doc. 91, Second Am. Compl., ¶ 108, SAppx17; Doc. 91-6, Ex. 6 to Second Am. Compl., SAppx44.)[11]

Doe's only argument in support of his due process challenge to the procedures applied in his case is that the "tribunal" was not impartial. (Doe's Br. at

---

[11] To the extent that Doe attempts to argue that the hearing deviated from the Code, in addition to lacking any factual basis, that would not be a basis for a due-process claim. While "[s]ignificant and unfair departures from an institution's own procedures can amount to a violation of due process[,]" Doe has not pleaded any "significant and unfair departures" from the Code because there were none. *Furey v. Temple Univ.*, 730 F. Supp. 2d 380, 396-97 (E.D. Pa. 2010) (citation omitted).

3-4.) Doe's allegation in this regard relates solely to Feldbaum's involvement in a completely distinct task force that concerned academic integrity issues. (*See* Doc. 91, Second Am. Compl., ¶ 127, SAppx19-20.) Doe's student conduct matter did not involve academic integrity (it involved Doe's failure to abide by the administrative directive), and Doe otherwise fails to allege how Feldbaum's alleged bias would have affected his student conduct proceedings. (*See* Doc. 108, Report & Recommendation, at 20-21, SAppx77-78.) Perhaps most fundamentally, Feldbaum was not the "tribunal." To the contrary, and as the report from Doe's student conduct hearing (attached as an exhibit to his Second Amended Complaint) makes clear, the finding and sanction imposed against Doe were made by the Administrative Hearing Officer, Professor Costanzo—not Feldbaum. (*See* Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx55-57.) The absence of allegations linking any purported bias on Feldbaum's part to the outcome of Doe's student conduct proceedings defeats any claim of bias as to Doe's due process claim. *See Furey*, 884 F. Supp. 2d at 255 (ruling that due process claims based on alleged bias must be supported by "more than mere speculation and tenuous inferences") (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 15 (1st Cir. 1988)).

Appellees acknowledge Chief Judge Brann's footnoted suggestion that Doe "adequately alleges that the disciplinary hearing he was afforded would be insufficient under the Due Process Clause, as he alleges that the tribunal was not

impartial." (Doc. 111, Order, at 2 n.6.) Respectfully, for the reasons just noted, this footnoted dicta is based on an inaccurate premise, as Feldbaum—even if adequately pled to not be "impartial"—was not part of the "tribunal" that decided Doe's case. In any event, Chief Judge Brann ultimately and correctly held that any procedural or bias issues involving the tribunal would be "irrelevant, as Chief Magistrate Judge Mehalchick correctly concluded that Doe failed to allege any protected interest that would trigger due process protections." (*Id.*)

## II.    The District Court Correctly Dismissed Doe's First Amendment Retaliation Claim Because Doe Does Not Allege Facts Showing That He Engaged in Protected Conduct by Owning the Website Domain, "judmathews.com"

Doe concedes at the outset of his First Amendment argument that "[w]hether the [*sic*] protected speech was actually engaged in by the employee is not determinative[.]" (Doe's Br. at 14.) In other words, Doe does not really argue that he engaged in protected speech, and he has therefore waived any challenge to the District Court's finding that he did not plead conduct protected by the First Amendment. Even if this argument was preserved, Doe's First Amendment retaliation claim fails as a matter of law because the District Court properly held that registering a website domain, without more, fails to constitute constitutionally-protected conduct.

To state a claim for First Amendment retaliation, a plaintiff must plead "that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in

retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2011 (2019) (other citations and quotations omitted)); *see also Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013). Here, Doe did not engage in constitutionally-protected conduct because setting up a domain, "judmathews.com," served a purely functional purpose. Doe's argument that the University Defendants perceived the domain as a "potential threat" fails to rescue his claim because he does not plead that the University Defendants ever believed he engaged in protected conduct, nor that Doe ever threatened such conduct.

### A.   Doe Waived Any Challenge to the District Court's Threshold Ruling That Doe's Pleadings Do Not Allege Protected Conduct

As noted, Doe does not truly challenge the District Court's determination that he did not plead conduct protected by the First Amendment. Rather, Doe confusingly suggests that the Court failed to address something he calls "perception theory,"[12] which does not address the District Court's determination.

---

[12] Doe fails to cite any case law that uses the term "perception theory" to describe a First Amendment retaliation claim. Indeed, research suggests that the phrase "perception theory" has only been mentioned by this Court within the context of statutory employment discrimination claims. *See, e.g., Fogleman v. Mercy Hosp.,*

(*See infra*, at Part II(b).) Doe has waived this dispositive issue, and this Court may affirm on that basis alone. *See FDIC*, 207 F.3d at 169 (finding an issue not raised in opening brief on appeal was waived and would not be addressed); *see also Laborers' Int'l Union of N. Am., AFL-CIO*, 26 F.3d at 398 ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court.").

**B.  The District Court Correctly Determined That Doe's Registration of a Website Domain Is Not Protected Conduct under the First Amendment Because the Domain Served Only a Functional Purpose**

Even if not waived, Doe's First Amendment retaliation claim fails—first, because there was no protected activity. Conduct may be considered constitutionally protected by the First Amendment "when the nature of the activity, combined with factual context and environment in which it was undertaken, shows that the activity was sufficiently imbued with elements of communication." *Muraveva v. Toffoli*, 709 F. App'x 131, 133 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002)). An ordinarily functional item (i.e., a book title or a website domain) can be considered an act of protected conduct only if there is an intent or understanding that the conduct also contains elements of communication.

_____

*Inc.*, 283 F.3d 561, 565 (3d Cir. 2002) (discussing the plaintiff's "perception theory" with respect to the Americans With Disabilities Act, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act).

*See Tenafly Eruv Ass'n*, 309 F.3d at 163-64. Determining whether an activity is "imbued with elements of communication" requires examining whether the plaintiff "intended subjectively (i.e., actually intended) for his conduct to communicate to persons whom he expected to observe it (i.e., his intended audience)." *Id.* at 161 (citing *Troster v. Pa. State Dep't of Corr.*, 65 F.3d 1086, 1091-92 (3d Cir. 1995)). This Court has also "considere[d] whether observers understood the message the [plaintiff] intended his conduct to convey." *Id.* (citing *Troster*, 65 F.3d at 1091-92).

Within the context of a website, the District Court correctly observed that the mere establishment of a website domain is not an act of protected conduct if it serves only to identify a source of information, such as a website location. (*See* Doc. 108, Report & Recommendation, at 14-15, SAppx71-72 (citing *Jews For Jesus v. Brodsky*, 993 F. Supp. 282, 286 n.1 (D.N.J. 1998) (quoting *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97-629, 1997 WL 133313, at *10 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998)); *aff'd*, 159 F.3d 1351 (3d Cir. 1998).) In such instances, the domain is exclusively functional because the name of the domain itself does not convey or contain an expressive message. *See Tenafly Eruv Ass'n*, 309 F.3d at 163-64 (favorably citing the Second Circuit's conclusion "that Internet domain names are ordinarily functional, but can be expressive if they contain a message, e.g., '.jones_for_ president'") (discussing

*Name.Space, Inc. v. Network Sols., Inc.*, 202 F.3d 573, 586 (2d Cir. 2000)). Thus, when "a domain name 'provide[s] no commentary or criticism of [a] Defendant or any other topic,' it is likely not communicative in nature" and not afforded constitutional protection. (Doc. 108, Report & Recommendation, at 14, SAppx71 (quoting *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 47-48 (E.D.N.Y. 2013)).)

The District Court correctly concluded that Doe did not plead that he engaged in any protected conduct because the domain's purpose was purely functional. Doe's Second Amended Complaint alleges in conclusory fashion that his "creation of a website on judmathews.com is his valid first amendment exercise." (Doc. 120, Memo. Op., at 17 (citing Doc. 91, Second Am. Compl., ¶ 137, SAppx22).) However, Doe does not allege that the domain was meant to demonstrate a belief or assert anything, or that it was ever understood to communicate a message. *Troster*, 65 F.3d at 1091. For example, Doe does not plead that the domain "judmathews.com" provides "any 'commentary or criticism' regarding Mathews, his work, or any other communicative message." (Doc. 108, Report & Recommendation, at 15, SAppx72 (quoting *Web-adviso*, 927 F. Supp. 2d at 47-48).) The record below suggests that nothing was displayed on the website at all. (*See* Doc. 120, Memo. Op., at 16-17.) Doe himself pleads that he purchased the domain due to Professor Mathews's encouragement alone, not out of a desire to communicate any message. (Doc. 91, Second Am. Compl., ¶ 16, SAppx4.) Nor

does Doe plead that any message published through the domain name was at issue in his conduct hearing. Rather, Doe alleges that the focus was on the "domain transaction" and "[Professor] Mathews' assertion that Plaintiff's continued ownership of judmathews.com." (*Id.*, ¶¶ 89, 141, SAppx14, SAppx22.)

Thus, the District Court correctly ruled that the domain serves only a "functional purpose" as a "straightforward identifier as to what the website may contain." (Doc. 108, Report & Recommendation, at 14-15, SAppx71-72 (quoting *Web-adviso*, 927 F. Supp. 2d at 47-48; *Planned Parenthood*, 1997 WL 133313, at *10)); *cf. Name.Space, Inc.* 202 F.3d at 586 (2d Cir. 2000) (explaining that titles of websites such as ".jones_for_ president" and ".smith_for_senate" may constitute protected political speech or parodies because they contain an "expressive element"). The District Court properly concluded that Doe's claim of First Amendment retaliation vis-à-vis the *creation* of the website" focuses on Doe's functional creation and ownership of the domain—not an act of protected conduct. (Doc. 120, Memo. Op., at 18) (emphasis added).)

In sum, Doe's creation of a website domain, without any "imbued [] elements of communication," fails to establish constitutionally-protected conduct, and his First Amendment retaliation claim fails as a matter of law. *Tenafly Eruv Ass'n*, 309 F.3d at 163-64. The District Court properly dismissed his claim on that basis.

**C.    The District Court Also Correctly Dismissed Doe's First Amendment Retaliation Claim Because Doe Does Not Plead That He Suffered Retaliation Because the University Defendants Believed He Had Engaged in Protected Conduct**

Doe attempts to salvage his First Amendment retaliation claim by arguing that the University Defendants purportedly perceived a threat from Doe's ownership of the website domain and retaliated against Doe in response to that perceived threat. (Doe's Br. at 15-16.) The District Court correctly rejected this argument, too. (*See* Doc. 120, Memo. Op., at 17 & n.84 (analyzing and dismissing Doe's contention that "'Plaintiff *might* post' defamatory material or whether the 'feared' disclosure of Professor Mathews's purported abuse '*might* happen in the future'") (emphasis in original) (quoting Doc. 112, Motion for Reconsideration, at 11-13).)

Doe links this back to a "perception theory" argument, and contends that a public entity's *belief* that an employee engaged in protected conduct is sufficient to support a First Amendment retaliation claim. (*See* Doe's Br. at 14-15.) But Doe's effort to analogize his claim to that of a public employee ignores that the conduct, be it real or perceived, must involve an employee (which Doe is/was not) and must be *protected conduct. See Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015), as amended (Oct. 25, 2019) ("To establish a First Amendment retaliation claim, a public employee must show that [] his speech is protected by the First Amendment."); *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272

(2016) ("Here the employer mistakenly thought that the employee *had* engaged in protected speech.") (emphasis in original); *Avant v. Doke,* No. 21-7031, 2022 WL 2255699, at *7 (10th Cir. June 23, 2022) (observing that in a public employee free speech case, the plaintiff must establish "whether the speech is protected"); *DiMarco v. Borough of St. Clair*, 511 F. Supp. 3d 545, 551 (M.D. Pa. 2021) ("[A] defendant may be liable for retaliation under the First Amendment when the defendant takes a retaliatory action [based on the] mistaken belief that the plaintiff has engaged in protected activity.") (citing *Heffernan*, 578 U.S. at 272-73); *Bird v. W. Valley City*, 832 F.3d 1188, 1212 (10th Cir. 2016) (ruling that "[p]laintiff was a public employee who claims her municipal employer discharged her based on its belief that she engaged in constitutionally protected activity"). For the reasons explained in Section II.B., above, Doe does not allege the requisite protected conduct. And Doe does not actually plead that any of the University Defendants *believed* he engaged in protected conduct. This is fatal to his claim. Doe's First Amendment claim fails under any theoretical "perception theory," too.

Doe also argues that he was retaliated against under a mistaken belief that he "w[ould] publish 'defamatory materials,'" and portends that by dismissing his claim, "unscrupulous faculty members" will now have a "playbook" to retaliate against a "student [that] makes a complaint." (Doe's Br. at 14, 16.) This argument also does not save his claim. The Second Amended Complaint alleges, in

conclusory fashion only, that Professor Mathews perceived a threat from Doe's "publishment of the website," but the very support Doe cites is a Behavioral Threat Management Team Referral Form that Doe attaches to his complaint, which states the exact opposite: that Doe had "*not threatened*" to publish defamatory material against Professor Mathews (or any of the University Defendants). (Doc. 91, Second Am. Compl., ¶¶ 82-83, SAppx13; Doc. 91-3, Ex. 3 to Second Am. Compl., SAppx37-40 (emphasis added).) So, even if Doe had alleged protected conduct, his complaint still fails to allege retaliation owing to a perceived threat.

Doe likewise fails to plead that the University Defendants took retaliatory action based on the perception that he engaged in any communication via the domain, "judmathews.com." Rather, Doe pleads that his counseling "sanction" was based on "the fact that [Doe] insisted on declaring that his actions revolving around the domain name and associated website *were at the behest of Dr. Mathews*." (Doc. 91, Second Am. Compl., ¶ 111, SAppx17; Doc. 91-9, Ex. 9 to Second Am. Compl., SAppx57) (emphasis added).) Thus, according to Doe's own pleading, he was required to attend counseling not in retaliation for any communications on the website, but as a result of his mistaken beliefs as to the nature of his relationship with Dr. Mathews. Doe's complaint is otherwise devoid of allegations concerning the domain's perceived meaning (be it threatening or otherwise) or any protected conduct on Doe's part.

In conclusion, Doe's argument that the University Defendants "perceived" a vague "threat" through his ownership of the website domain does not alter the District Court's correct determination that the allegations in the Second Amended Complaint fail to state a claim for First Amendment retaliation.

## III. Doe Confuses the Motion to Dismiss Standard with the Standard Applicable to a Motion for Reconsideration, Which the District Court Correctly Applied

Doe's final contention is that the District Court "adopted an unrecognizable standard when entertaining Appellee's 12(b)(6) Motion." (Doe's Br. at 17.) Though Doe purports to challenge the lower court's ruling on the University Defendants' Motion to Dismiss, the substance of his argument focuses exclusively on the District Court's Memorandum Opinion ruling on Doe's *Motion for Reconsideration* of the District Court's order dismissing his Second Amended Complaint with prejudice. (*See* Doe's Br. at 17-18 (citing Doc. 120, Memo. Op., at 3 and 19).) The District Court applied the correct standard to Doe's Motion for Reconsideration. The standard aside, none of the statements with which Doe takes issue were pivotal to the District Court's analysis, and Doe's criticisms lack merit. This Court should affirm the District Court rulings under any standard.

### A. The District Court Correctly Evaluated Doe's Motion for Reconsideration for "Clear Error"

In reviewing a motion for reconsideration, the movant must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the

availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d at 87. The District Court correctly evaluated Doe's Motion for Reconsideration for "clear error." (Doc. 120, Memo. Op., at 7.)

**B.    Doe's Challenges to the District Court's Decision on Reconsideration Lack Merit and Are Not Dispositive**

"[I]t is well-established . . . that a motion for reconsideration is an extremely limited procedural vehicle." *Resorts Int'l v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992). "A decision suffers from clear error only if the record cannot support the findings that led to that ruling." *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010) (citing *United States v. Grape*, 549 F.3d 591, 603-04 (3d Cir. 2008)). "Thus, a party must do more than allege that portions of a ruling were erroneous to obtain reconsideration of that ruling." *Id*. A party also must demonstrate either that the rulings on which it bases its request were without support in the record or would result in "manifest injustice" if not corrected. *Id.*; *see also In re Vehicle Carrier Services Antitrust Litig.*, 846 F.3d at 87. Of course, even if the court erred, reconsideration should still be denied if that error "would not alter the result of the initial decision." *United States v. Kubini*, Crim. No. 11-14, 2018 WL 4282852, at *6 (W.D. Pa. Sept. 7, 2018); *see also Tennant v. Range Res. - Appalachia, LLC*, No. CV 18-1533, 2021 WL 5040421, at

39

*4 (W.D. Pa. Oct. 29, 2021) (explaining that reconsideration "is not warranted" when "the outcome . . . would not change"); *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 802 F. Supp. 2d 536, 538 (D. Del. 2011) ("[I]n no instance should reconsideration be granted if it would not result in amendment of an order."); *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 447 (E.D. Pa. 2002) (denying motion for reconsideration "given, further, that the substantive outcome would not change").

Doe claims that the District Court deviated from the correct legal standard in four instances, but none of those instances demonstrate that the District Court made a clear error of law—or any error at all. Indeed, assuming *arguendo* that the District Court applied the incorrect legal standard, the four instances Doe cites were of no consequence to the District Court's ruling and therefore do not result in "manifest injustice" or warrant reconsideration.

*First*, Doe appears to challenge the District Court's observation that statements in Doe's pleadings differ from statements made by Professor Mathews in Mathews's letter to the University. (Doc. 120, Memo. Op., at 2-3 (discussing Doc. 91, Second Am. Compl., ¶¶ 16, 18, 25, 28-29, 30 and Ex. 3, SAppx4-6, SAppx37-40).) The District Court noted that Doe claims Professor Mathews encouraged him to purchase the domain, "judmathews.com," but Professor Mathews denied this. (*Id.*) This is a non-issue. The District Court went on to

conclude that "[r]egardless, both [Doe and Professor Mathews] agree that when he learned Doe purchased the domain, Professor Mathews reacted negatively and did not want Doe owning a web domain with his name." (Doc. 120, Memo. Op., at 3.) Further, the distinction Doe attempts to make has no significance; none of the claims at issue in this appeal rest on Doe's allegation that he purchased the domain at Professor Mathews's behest. And the District Court did not rely on this allegation either. This is not clear error.

*Second*, Doe appears to challenge the District Court's analysis of Doe's pleadings describing Professor Mathews as a "father figure." (Doc. 120, Memo. Op., at 3.) "According to Doe, Professor Mathews did not object to the gifts or Doe's expressions of admiration. Professor Mathews's letter to the University suggests otherwise." (*Id.*) It makes no difference whether Professor Mathews welcomed Doe's admiration. None of Doe's claims rest on an allegation that Professor Mathews welcomed Doe's admiration, or whether or not Professor Mathews served as Doe's father figure. And none of these issues factored in to the District Court's ruling on Doe's Motion for Reconsideration. Thus, Doe has not shown clear error.

*Third*, Doe criticizes as improper the District Court's assessment of Doe's statement in an affidavit he attached to his Reply Brief in support of his Motion for Reconsideration. (*See* Doe's Br. at 17-18 (discussing Doc. 120, Memo. Op., at 12,

n.60).) The District Court did not rely on Doe's affidavit at all in making its decision, correctly noting that "the Court is limited to the facts alleged in the Second Amended Complaint and the supporting documentation attached thereto . . . [F]acts outside the Second Amended Complaint—including those first introduced in the parties' briefing papers—are not properly considered at this stage." (*Id.* (citations and quotations omitted).) Doe has not demonstrated clear error on this point.

*Fourth*, and finally, Doe references the District Court's admonishment of his briefing on the final page of the Memorandum Opinion. (Doe's Br. at 18.) As the District Court's own words show, the District Court was not crediting disputed facts to Doe's detriment; it was admonishing Doe for using offensive language in his briefing and failing to tailor his arguments to the actual allegations in his pleading:

> Further, the Court is compelled to issue an admonishment and warning. Doe aspires to be a member of the Bar. But his briefing is unbecoming of the profession. Certain language he uses and arguments he raises are patently offensive—deeply inflammatory but divorced from the facts and devoid of merit. We demand more from those in the legal profession.

(Doc. 120, Memo. Op., at 19.)

In sum, none of Doe's challenges demonstrate that the District Court improperly applied the clear error standard or rested its decision on disputed facts.

## <u>CONCLUSION</u>

For each of the foregoing reasons, the Court should affirm.


Respectfully submitted this 23rd day of February 2023.

Saul Ewing LLP

By:  *s/ James A. Keller*

James A. Keller (PA 78955)
Carolyn A. Pellegrini (PA 307026)
Patrick F. Nugent (PA 313979)
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964 / -7121 / -7134
F: 215-972-4152
james.keller@saul.com
carolyn.pellegrini@saul.com
patrick.nugent@saul.com

*Counsel for Appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University*

## **CERTIFICATE OF BAR ADMISSION**

### **3d Cir. L.A.R. 28.3(d) Bar Membership Certification**

Pursuant to Third Circuit Local Rule of Appellate Procedure 28.3(d), Appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University hereby certify that James A. Keller, Carolyn A. Pellegrini, and Patrick F. Nugent of Saul Ewing LLP are members of the bar of this Court.

Dated:  February 23, 2023

*s/ James A. Keller*

James A. Keller (PA 78955)
SAUL EWING LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE OF APPELLATE PROCEDURE 31.1(C)

I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains **9,997** words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the

paper copies, and the SentinelOne 22.2.4.558 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated:  February 23, 2023              *s/ James A. Keller*

James A. Keller (PA 78955)
SAUL EWING LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that a copy of the foregoing Brief with Addendum was electronically filed with the Clerk of the Court using the CM/ECF system, which will accomplish service by sending notification of such filing to the Appellant, who is a registered electronic filer. In addition, a paper copy has been sent to the Appellant via first class U.S. mail at the following address:

John Doe
P.O. Box 2062
Linden, NJ 07036

Dated:  February 23, 2023          *s/ James A. Keller*

James A. Keller (PA 78955)
Saul Ewing LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
P: 215-972-1964
F: 215-972-4152
james.keller@saul.com

*Counsel for Appellees The Pennsylvania State University, Karen Feldbaum, Francesco Costanzo, and Unknown Staff of Counseling and Psychological Services at the Pennsylvania State University*

# ADDENDUM

## <u>TABLE OF CONTENTS</u>

### <u>Federal Rules</u>

Federal Rule of Civil Procedure 12 ................................................................. ADD1

### <u>Federal Statutes</u>

42 U.S.C. § 1983 ..................................................................................... ADD5

## FEDERAL RULES

## Rule of Civil Procedure 12.  Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(a) Time to Serve a Responsive Pleading.

(1) In General. Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) United States and Its Agencies, Officers, or Employees Sued in an Official Capacity. The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

(3) United States Officers or Employees Sued in an Individual Capacity. A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or

ADD1

crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) Effect of a Motion. Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

> (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

> (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

> (1) lack of subject-matter jurisdiction;

> (2) lack of personal jurisdiction;

> (3) improper venue;

> (4) insufficient process;

> (5) insufficient service of process;

> (6) failure to state a claim upon which relief can be granted; and

> (7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) Motion for Judgment on the Pleadings. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) Motion for a More Definite Statement. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

> (1) on its own; or

> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) Joining Motions.

> (1) Right to Join. A motion under this rule may be joined with any other motion allowed by this rule.

> (2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) Waiving and Preserving Certain Defenses.

> (1) When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)–(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) When to Raise Others. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) Hearing Before Trial. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

## FEDERAL STATUTES

### 42 U.S.C. § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.