# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

| | |
|---|---|
| JOHN DOE | |
| *Pro Se Appellant* | |
| v. | No. 22-2990 |
| THE PENNSYLVANIA STATE UNIVERSITY; KAREN FELDBAUM, in her individual and official capacity; FRANCESCO COSTANZO, in his individual and official capacity; UNKNOWN STAFF OF COUNSELING AND PSYCHOLOGICAL SERVICES AT PENN STATE, in his or her individual and official capacity; | On appeal from the U.S. District Court for the Middle District of Pennsylvania<br><br>Civil Action No. 4:19-cv-01438 |
| *Appellees* | Oral Argument Requested |

Informal Reply Brief for a Pro Se Appellant

March 16, 2023                                                                                         John Doe

Statement of Issues

Introduction

Argument

    I. District Court's judgment dismissing Appellant's Complaint is requested for a review.

    II. Appellees violated Appellant's due process rights.

        1. Sanctioning Appellant to receive a year-long mental health treatment altered Appellant's status.

        2. Falsely claiming Appellant violated the University directive by sending Mathews a text message is stigmatizing.

        3. By subjecting Appellant to an impartial tribunal, Appellees violated Appellant's procedural due process.

    III. Appellees retaliated against Appellant because Appellees believed Appellant would publish unflattering materials against them.

Conclusion

## Statement of Issues

1. Whether a University can require a student to receive mental health treatment for a year while violating due process of a student?

2. Whether a University can escape its first amendment liability by successfully preventing a student's first amendment right to exercise and claim the University is not liable because little was published?

3. Whether a district court may grant a defendant's 12(b)(6) motion because what stated in the complaint is "divorced from facts" (Dist. Dkt. 120 at 19) while what defendants asserted is "true" (id. at 12).

Introduction

This matter arises out of Appellant's difficult relationship with a faculty member, Judkins Cooper Mathews ("Mathews"). After assaulting Appellant (Dist. Dkt. 91 ¶ 145), to prevent Appellant from publishing his experience, Mathews reported Appellant to the law school administration and the University student conduct office (id ¶ 138).

Initially, a no-contact directive that prohibited any interaction between Mathews and Appellant was issued against Appellant. (id ¶ 57). Appellant was prohibited from publishing anything on the website that he owns, and Appellant was demanded to take down the website published on judmathews.com. (id ¶ 55).

However, Appellees needed to further discredit Appellant. The no-contact directive was transformed into a more serious charge against Appellant after Mathews reported he received an anonymous text, and that text message was attributed to Appellant. (id ¶ 71). In addition, while entertaining Mathews' complaint regarding the text message, Appellee continues to take issue with the website he owned. (id ¶ 89).

The Appellant was ultimately sanctioned to undergo a year-long mental health treatment and placed on probation. (id ¶ 111). This lawsuit followed.

Argument

I.  District Court's judgment dismissing Appellant's Complaint is requested for a review.

"An appeal of a denial of a motion for reconsideration 'brings up the underlying judgment for review.' *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992)." *Szostek v. Drexel Univ.*, 597 F. App'x 50, 4 (3d Cir. 2015).

Here, Appellant is requesting the Court to reverse the District Court's judgment dismissing his Complaint. And the law is clear: Appellant's timely appeal from the denial of his motion for reconsideration brings up the underlying judgment dismissing his Complaint for review, and the Court should "review a district court's dismissal for failure to state a claim de novo." *Newark Cab Ass'n. v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (Rule 12(b)(6)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000) (28 U.S.C. § 1915(e)(2)(B)(ii)). In other words, the Court should review "a denial of a motion for reconsideration for abuse of discretion, but [] review the District Court's underlying legal determinations de novo and factual determinations for clear error." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 246 (3d Cir. 2010).[1]

---

[1] While Appellant is objecting to Appellee suggesting a narrow standard of review, even under that standard, the Court should reverse the District Court's decision because the District Court's deference to Appellees in a 12(b)(6) Motion

II. Appellees violated Appellant's due process rights.

Appellant's due process violation claim is based on *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding that the fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner"). Courts have "recognized that these protections apply to higher education disciplinary decisions." *Doe v. Cummins*, 662 F. App'x 437, 14 (6th Cir. 2016), including the Third Circuit. *See Sean Park v. Temple Univ.*, No. 18-1891, at *9 n.8 (3d Cir. Dec. 11, 2018) (discussing *Mathews* in the higher education context).

1. Sanctioning Appellant to receive a year-long mental health treatment altered Appellant's status.

Before the sanction, Appellant had autonomy to seek mental health help or even treatment (Dist. Dkt. 91 ¶ 36); after the sanction, Appellant had no choice but to receive mental health treatment for an entire year and his record must be verified by the University official (id ¶ 111). This is an altered status.

The essence of a "stigma-plus" claim is "the government is doing [something] to [the claimant]." *Wisconsin v. Constantineau*, 400 U.S. 433, 437

---

determination is a reversible error. *See Kwanzaa v. Tell*, No. 21-1939, at *7 (3d Cir. Nov. 8, 2022) (reversing district court's decision on Motion for Reconsideration based on "District Court improperly credited the police report that was attached to the complaint over the allegations in [a pro se plaintiff's] complaint").

(1971). The Supreme Court in *Paul v. Davis*, again emphasized: "We think that the italicized language in the last sentence quoted, 'because of what the government is doing to him,' referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law — the right to purchase or obtain liquor in common with the rest of the citizenry." *Paul v. Davis*, 424 U.S. 693, 708 (1976).

In *Wisconsin v. Constantineau*, the right at issue (to purchase or obtain liquor) was not a fundamental right. *see Clark v. Township. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution.") (cited in *Simonson v. Borough of Taylor*, No. 20-1896, at *10 (3d Cir. Dec. 28, 2020)). In other words, as long as the government is doing *something* to Appellant, his case is actionable. The right at issue does not need to be fundamental, nor do some certain rights guaranteed by state law or the Constitution are actionable while other rights are not.

And here, "it beyond dispute that an individual's decision whether or not to seek psychiatric care or treatment falls within this definition of a protected privacy interest." *Gorman v. University of Rhode Island*, 646 F. Supp. 799, 814 (D.R.I. 1986) (affirmed in *Gorman v. University of Rhode Island*, 837 F.2d 7, 11 (1st Cir.

1988)). This right is guaranteed by Pennsylvania state law as well (*In re Duran*, 769 A.2d 497, 503 (Pa. Super. Ct. 2001) ("right to refuse medical treatment is deeply rooted in our common law")).

And unlike the University Defendants in *Gorman*, Appellees have done far *more* than "a mandatory examination by the University's consulting psychiatrist, and, if recommended, commencement of a course of treatment." *Gorman*, 837 F.2d at 10 (1st Cir. 1988). Rather, Appellees skipped any examination or evaluation and sanctioned Appellant to go through a year's worth of mental health treatment. (Dist. Dkt. 91 ¶ 111). Appellant was never diagnosed with any mental health disease, and he was seeking help over the phone because he was attempting to manage stress caused by Professor Mathews. (*Id.* ¶ 36).

In defense, Appellees are arguing because they did not restrain Appellant or force Appellant to take medicine, they can arbitrarily require Appellant to receive mental health treatment. (Appellee's Br. at 36). Specifically, Appellees emphasize they did "not involuntarily institutionalize[] or involuntarily administer medication" against Appellant. (*Id.* at 38). But just because Appellees did not immediately[2] treat Appellant like an animal, that does not change what Appellant did is already beyond a "shocking extreme." *Gorman*, 646 F. Supp. at 814 (D.R.I.

---

[2] Appellant never alleged his one-year-long mental health treatment will be free of involuntary institutionalization or involuntary administration of medication.

1986), and the sanction that Appellees imposed altered Appellant's autonomy to seek psychiatric care.

2. Falsely claiming Appellant violated the University directive by sending Mathews a text message is stigmatizing.

Appellees do not dispute what they accused of Appellant is defamatory (Appellee's Br. at 20-21). To be sure, the District Court concluded Appellee's accusal of "knowing[] violation of a University directive" against Appellee to be stigmatizing (Dist. Dkt. 120 at 11), but accepted Appellees' defense by concluding "it would not qualify as improperly stigmatizing because the statement would be true" (*Id.* at 12). Appellees maintain this position (Appellee's Br. at 21), and there are two reasons why this line of argument should be rejected.

First, nowhere in Appellant's Complaint does he allege what Appellee's accused against Appellant is true. And to the contrary, Appellant specifically disputes he knowingly violated the University directive by sending a text message. (Dist. Dkt. 91 ¶ 70, 74). *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (holding that on a motion to dismiss, "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it"). Whatsmore, acceptance of Appellee's defense as true at the Motion to Dismiss stage was improper. *See, e.g.*, *Stanziale v. Nachtomi* (*In re Tower Air, Inc.*), 416

F.3d 229, 242 (3d Cir. 2005) (holding that affirmative defenses generally do not form the basis for dismissal under Rule 12(b)(6)).

Second, the District Court already concluded Appellant *adequately* alleged "disciplinary hearing [appellant] was afforded would be insufficient under the Due Process Clause, as he alleges that the tribunal was not impartial." (Dist. Dkt. 111 at 2). Then under the "settled principle of administrative law that where an adjudication is tainted by the decisionmaker's bias it must be invalidated. *See, e.g., Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *Porter v. Califano*, 592 F.2d 770, 780-82 (5th Cir. 1979)." *In re Chateaugay Corp.*, 87 B.R. 779, 825 (S.D.N.Y. 1988). Therefore appellant adequately alleged the factual findings of this impartial tribunal – that Appellant knowingly violated the University directive, along with all other one-sided statements including Appellee's characterization of the relationship between Appellant and Mathews are false.

3. By subjecting Appellant to an impartial tribunal, Appellees violated Appellant's procedural due process.

Appellees acknowledge the District Court concluded Appellant "adequately alleges that the disciplinary hearing he was afforded would be insufficient under the Due Process Clause, as he alleges that the tribunal was not impartial."

(Appellee's Br. at 28). Nonetheless, Appellees claim because Feldbaum was not part of the "tribunal" that decided Appellant's case, the District Court's "footnoted dicta" is based on that *single* inaccurate premise (*Id.* at 29) (emphasis added). There are two independent grounds for why Appellee's argument should fail.

    First, in the Operating Complaint, Feldbaum's country of origin-based bias is not the only bias he alleged. Appellant also alleged pro-complainant-anti-respondent bias and pro-faculty-anti-student bias. (Dist. Dkt. 91 ¶ 145). In addition, Appellant alleged Feldbaum contacted Appellant to enforce psychiatric sanction before the actual hearing and before the sanction was going to be finalized, (*id*) and Feldbaum pressured Appellant to legitimize Mathews' plagiarism immediately after the hearing (*Id.* ¶ 98) and other deviation from the code. Appellees are silent on all of these points that formed the District Court's decision that the tribunal was *impartial*, therefore appellees forfeited their argument. *TD Bank v. Hill*, 928 F.3d 259, 276 n.9 (3d Cir. 2019) ("we may affirm on any ground supported by the record as long as the *appellee* did not waive —as opposed to forfeit —the issue. (citations omitted) (emphasis added)).

    Second, even to Appellee's single-point challenge to the District Court's conclusion, the Magistrate Judge already concluded Feldbaum was permitted to have the final say in deciding Appellant's case. Specifically, in response to Appellant's allegation that Feldbaum altered the hearing report before forwarding it

to Appellant, the District Court concluded Feldbaum is permitted to do so. (Dist. Dkt. 71 at 44). And Appellant alleged Feldbaum alleged Feldbaum altered the final sanction. (Dist. Dkt. 91 ¶ 112). Therefore, Appellee's assertion that Feldbaum cannot possibly impact Appellant's sanction is not a valid defense.

> III. Appellees retaliated against Appellant because Appellees believed Appellant would publish unflattering materials against them.

In his operating Complaint, Appellant alleged a mock website was *published*. (Dist. Dkt. 91 ¶ 48). His publication of a mock website prompted Appellee's state action that included the issuance of a no-contact directive, (Id. ¶ 138). "Actions revolving around" judmathews.com formed appellee's retaliatory action. (Dist. Dkt. 91 ¶ 48), and the sanction report[3] (Dist. Dkt. 91-9 at 2) shows Appellees's perceived threat was Appellant taking initiative to "curate Mathews' image" (id. at 2) ("Dr. Matthews stated that he never directed [Appellant] to build a website for him or to be involved in any way in curating Dr. Matthews web presence. In fact, Dr. Matthews indicated that he had to repeatedly insist with [Appellant] not to be involved in curating his image."; "[Appellant] insisted in

---

[3] If all Appellees can argue on this point is pointing out imperfect pleading and creating factual disputes (Appellee's Br. at 35), the District Court should have allowed Appellant to amend his Complaint, not dismissal with prejudice. *Harrison v. Local 54 of Amer. Fed. of State*, 518 F.2d 1276, 1284 n.4 (3d Cir. 1975) ("Particularly where a complaint is filed pro se, a restrictive view of the pleadings is improper.").

declaring that his actions revolving around the domain name and associated website were at the behest of Dr. Matthews, indicate that [Appellant] may require additional counseling.").

As a threshold matter, Appellant emphasizes Appellees are not arguing other elements of First Amendment retaliation claims are at issue. (Appellee's Br. at 30). To the contrary, Appellees admit what they took was a "retaliatory action." (*Id.* at 37), but argue registration of judmathews.com was not protected conduct, and retaliation owing to a perceived threat was not alleged (*Id*).

First, Appellees now argue the perception theory under First Amendment claims must involve an employee, and claims Appellant was not an employee. (Appellee's Br. at 35). However, Appellant was an employee of Appellees throughout the controversy. (Dist. Dkt. 91 ¶¶ 24, 122). And contrary to Appellee's narrow view, "[a]s the Supreme Court in *Healy v. James* explained, "the precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, `the vigilant protection of constitutional freedoms is no-where more vital than in the community of American schools.'" *See also Widmar v. Vincent*, 454 U.S. 263, 268-69, (1981) ("With respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state

universities."). *Dejohn v. Temple Univ*, 537 F.3d 301, 314 (3d Cir. 2008). Appellees offer no reason, and Appellant cannot think of any reason why a workplace employee should enjoy more first amendment protection than a student.

Second, the protected conduct at issue is publication of website, not registration of the domain. This point was made clear[4] at the District Court, and the Court should reject Appellee's distortion of Appellant's Complaint. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918 n.4 (3d Cir. 2018) ("Even if not waived, Appellees' contentions are not supported by [Appellant]'s complaint, which is the only document we can consider on this motion to dismiss.").

Third, *for the first time*[5], Appellees now argue Appellant failed to plead *any* protected conduct. (Appellee's Br. at 30). In other words, Appellees asks the Court to completely ignore the publication of website that prompted Appellees' state action, but Appellee's argument highlights why there was little protected conduct

---

[4] "To be sure, publishing content on a website is indisputably distinct from registering a domain. Here, however, there is no published content to speak of. Nowhere in the Second Amended Complaint does Doe explain what was displayed on "judmathews.com." Indeed, based on Doe's pleadings and briefing, it's unclear whether anything was displayed on that webpage." (Dist. Dkt. 120 at 16-17).

[5] In the District Court, Appellees specifically praised the District Court for "correctly concluded that Doe's alleged conduct, as set forth in his Second Amended Complaint, does not rise to the level of conduct protected by the First Amendment." (Dist. Dkt. 113, at 20). Appellees maintained the same argument before (Dist. Dkt. 110 at 13). In other words, Appellees never claimed Appellant failed to plead conduct, but always claimed what Appellant plead was not enough to constitute protected conduct due to lack of substantial content published.

or little content: Appellees prohibited Appellant from publishing any more details on the website, and demanded the website be taken down. (Dist. Dkt. 91 ¶ 55). Appellee's state action "forbid[] certain communications when issued in advance of the time that such communications are to occur" *Alexander v. United States*, 509 U.S. 544, 550 (1993): this is prior restraint: prohibiting Appellant from publishing Appellant's view on Jud Mathews and Appellees. Importantly, Appellees prohibited Appellant from publishing *anything* more on judmathews.com, without any exception: what Appellees did to Appellant including no contact directive, a pretextual hearing, and enhancement of sanctions are all "classic examples of prior restraints" on speech, *U.S. v. Bell*, 414 F.3d 474, 478 (3d Cir. 2005), because Appellees continuously pursued and made sure Appellant can never publish anything on judmathews.com. If lack of substantial content can be a defense to Appellee's illegal first amendment retaliation, this in fact will legitimize Appellee's prior restraint on Appellant's speech. This cannot be the law.

Conclusion

The District Court's decision permits state actors to sanction an individual to go through year-long mental health treatment without procedural safeguards and permits state actors to evade liability from retaliating against an individual's first amendment exercise by acting fast. In the Twenty-first Century, this should not be. Appellant asks the Court to reverse the District Court's decision and reinstate his case.

Certificate

Appellees have access to ECF. Appellant certifies the hard copies that Appellant will send are identical to the electronic copies, and a virus check was performed using Chrome's virus scanner under the latest version.

March 16, 2023                                         Respectfully submitted,

                                                       ____s/_____.

                                                       John Doe
                                                       PO Box 2062
                                                       Linden, NJ 07036
                                                       johndoeprose@outlook.com
                                                       814-699-0985